(No. 31124.

ROBERT H. G. MONNINGER *et al.*, Appellants, *vs.* CHARLOTTE KOOB *et al.*, Appellees.

*Opinion filed March 22, 1950.*

418

CHARLES H. SOELKE, of Chicago, for appellants, and
ARTHUR F. SIEBEL, of Chicago, for appellant A. F. W.
SIEBEL.

JAMES D. MURPHY, and WILLIAM A. MURPHY, both
of Chicago, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from a decree of the superior court
of Cook County, dismissing for want of equity a complaint
which sought to impress certain assets of the estate of
Louis Monninger, deceased, with a trust. It was alleged
that Monninger and his wife, Anna, had, pursuant to an
oral contract, executed mutual and reciprocal wills which,
by their terms, were for the ultimate benefit of the plain-
tiffs. Anna, who is now deceased, survived her husband
but allegedly breached her contract by diverting the estate
she had received from her husband to persons other than
the plaintiffs, by a subsequent will. It was also alleged

that Monninger, in pursuance of the oral contract, conveyed a summer home to Anna in joint tenancy with himself, which property is also alleged to have been diverted from plaintiffs by a conveyance subsequent to her husband's death. Its recovery is likewise sought in this action thus involving a freehold and giving this court jurisdiction on direct appeal. The master, to whom the cause was referred by the trial court, found that plaintiffs' proof failed to establish that Louis and Anna had entered into a definite and binding contract for mutual wills, and recommended dismissal of the complaint. This appeal follows such a decree.

The salient portions of the record disclose that Monninger's first wife died in 1939, and at the time their three children, who are plaintiffs here, assigned their interest in her relatively small estate to the father. In January, 1941, Monninger married Anna M. Curry. No children were born to this union. On October 2, 1941, Anna and Louis executed separate wills which were prepared in the office of attorney Siebel, one of the defendants. The circumstances under which these wills were executed will be set forth in detail later in this opinion. By Louis's will he left his stock in Ernecke & Salmstein Co. to Anna, in trust for the benefit of herself and his three children, with power to convert the stock into cash if she deemed it advisable and to divide the proceeds equally among the three children and herself. The residue of his estate he left in equal parts to Anna and the children, with the provision for the share of any child who did not survive him to go to the issue of that child, or equally to the survivors, if there were no issue. Anna's will left her entire estate to Louis, and provided that if he predeceased her it was to go to her three stepchildren, the plaintiffs, in equal shares as tenants in common. On the same date the deeds, which created the joint tenancy in the summer house, were executed and delivered.

Monninger died August 6, 1944, and Anna accepted all the provisions of his will, and, together with Robert Monninger, one of the sons, was appointed executrix of the estate. She received a widow's award and a partial distribution of the assets, distributed the Ernecke & Salmstein stock as directed by the will, and took possession of the summer home. All securities were divided into four equal parts and given to Siebel to effect their transfer. Such of these securities as belonged to Anna, and which remained in Siebel's hands when this action was commenced, were deposited with the clerk of the court pending the outcome. September 10, 1945, Anna Monninger executed a new will leaving all her estate to a niece, Colette M. Koob, and naming her sister, Charlotte Koob, as executrix. Some time prior to her death on December 6, 1945, she transferred her Ernecke & Salmstein stock to Charlotte, and also created a joint tenancy with her in the title to the summer home. After Anna's death, the plaintiffs commenced this action, naming as defendants Colette and Charlotte Koob, the executrix of Anna's estate, attorney Siebel, and others not here involved.

The evidence by which plaintiffs seek to establish that the wills of Louis and Anna, dated October 2, 1941, were executed pursuant to a contract for mutual and reciprocal wills, is contained almost exclusively in the testimony of Siebel who drafted them. He testified that during September, 1941, Louis Monninger came to his office and told him to draw up a trust agreement placing Monninger's personal estate of about $100,000 in trust for the benefit of his three children. To provide for his wife, Anna, he directed that a will be drafted giving her one third of his real estate valued at $50,000. Siebel stated that before he could comply with such directions, Louis and Anna came to his office on October 2, 1941, the former stating that he had reconsidered and did not want the trust arrangement. While discussing what was to be done, Siebel said

that Louis negatived the idea of giving Anna a life estate, asserting: "I want her to get a fourth of my estate and she may use what may be necessary for her support, but what is left will go to my children by her will." At the same time Monninger is said to have stated that he had agreed to deed her the summer home in joint tenancy so that she would have a place to live. Anna, he testified, concurred in the arrangement, stating that she and her husband had talked the matter over and that she "was to make a will, giving everything she had, if she died first, to him; and if he died first, in equal parts to his children."

Siebel further testified that he then suggested making a separate written agreement outside the will, but that both parties declined, with expressions of confidence in each other, to do as orally agreed. Later when the wills were ready to be executed, Siebel stated that he advised them there was nothing to prevent either from making new wills if they wished, or to prevent Anna from renouncing her husband's will and taking under the statute if he predeceased her, to which Anna is said to have replied: "Louis and I have specifically agreed to do it this way. He knows that I will not change my mind and I will leave my will in force until I die, and I know he will; and there is no question about that in either of our minds." The wills and deeds, as detailed before, were then executed.

Robert Monninger testified that when Louis and Anna returned home on October 2, 1941, his father stated: "We saw Major Siebel; we made the arrangements; we had mutual wills drawn up, * * *. We decided to have mutual wills drawn up, * * *. And in case I die, Anna insisted that you act as co-executor;" after which Anna allegedly said: "Yes, that's the way I want it. It should go to the children after I'm gone, and we should be equal." Several other witnesses testified that on numerous occasions, both before and after the death of Louis, Anna stated that since Louis had wanted to have his affairs left that

way, she was going to see that his wishes were carried out, and that she had no intention of revoking her existing will or of making a new one.

The defendants, by their pleadings, denied that an oral contract for mutual wills had been made, or that any of the conversations related above had taken place. On their part, testimony of friends, associates and attorneys of Anna and Louis was introduced and tended to show by inference that Louis did not feel bound by any contract with regard to his will; that he had given Anna the summer home as an outright gift; and that just before his death he was contemplating a new will disinheriting the plaintiffs entirely.

The principal question before us is whether the foregoing evidence establishes an agreement between Anna and Louis to make mutual and reciprocal wills. Mutual or reciprocal wills are the separate instruments of two or more persons, which are reciprocal in their provisions, and by which each testator makes testamentary disposition in favor of the other. (*Frese* v. *Meyer,* 392 Ill. 59; *Frazier* v. *Patterson,* 243 Ill. 80.) Mutual wills may or may not be revocable at the pleasure of either party, depending on the circumstances and understanding upon which they were executed. (*Frazier* v. *Patterson,* 243 Ill. 80.) One of the elements constituting a will is its ambulatory character, that is, it may be revoked at the pleasure of the testator. (*Frese* v. *Meyer,* 392 Ill. 59; *Martin* v. *Helms,* 319 Ill. 281.) The same two cases are authority for the proposition that in mutual wills, which deprive the parties of the right to revoke and are supposed to be established by contract, the compact must be proved by clear and satisfactory evidence. (See, also: *Curry* v. *Cotton,* 356 Ill. 538; *Klussman* v. *Wessling,* 238 Ill. 568; *Rice* v. *Winchell,* 285 Ill. 36.) Mutual wills are not, generally, of themselves sufficient evidence of a contract and the consideration to support it must be *aliunde* the wills. (*Curry* v. *Cotton,* 356 Ill. 538.) Courts of equity look with jealousy upon the evidence offered in

support of such a contract and will weigh it in the most scrupulous manner. (*Sloniger* v. *Sloniger,* 161 Ill. 270.) It is also clear that, while a person owning property may make a contract to dispose of it by will in a particular way, (*Scham* v. *Besse,* 397 Ill. 309; *Oswald* v. *Nehls,* 233 Ill. 438,) such contracts do not stand on an especially favored footing, and a court will be.more strict in examining into the nature and circumstances of such agreements than with other contracts. *Kaiser* v. *Cobbey,* 400 Ill. 214; *Klussman* v. *Wessling,* 238 Ill. 568.

Having in mind these rules of law, we are of the opinion that the evidence introduced here to establish the contract is not of the clear and satisfactory character required in such cases. It is based in its entirety on statements by persons now dead. It is an axiom that courts lend a very unwilling ear to statements by interested persons about what dead men have said. Such evidence is subject to great abuse and will be carefully scrutinized when considered with the other evidence in the case. (*Keshner* v. *Keshner,* 376 Ill. 354; *Megginson* v. *Megginson,* 367 Ill. 168.) Attorney Siebel, who is the source of most of the statements, disclaims that he is an interested party, and the master in chancery so found; however, the record discloses that his activities in the trial of this cause are of such nature as to affect the weight, if not the competency, of his testimony. We note that although he declined to represent the plaintiffs because he anticipated being called as a witness, it was Siebel who did secure an attorney for the plaintiffs, and it was he who made the fee arrangements with such attorney. The original complaint was drawn in Siebel's office by his son, who is one of the attorneys here, and it was there signed and acknowledged by Robert Monninger, one of the plaintiffs. The strict rules of evidence which prevail in cases of this nature make it incumbent upon us to consider such factors, however slight their influence in the case may be.

424

Considering the plaintiffs' evidence in the strongest light, we believe it indicates only that while the thought of an irrevocable contract for mutual wills might have been entertained by the parties along with the other plans considered, it was not carried to completion. Their refusal to enter into a written agreement, coupled with the fact of their knowledge that either could make new wills, negatives the idea that the wills were executed with any thought or agreement that either party would not at any time have the right of revocation. The wills contain no reference to each other, nor do they contain any language from which a contract can be inferred. While there is some showing, and it is probable, that Louis and Anna discussed their wills, we fail to find that any agreement between them to make mutual wills has been clearly, satisfactorily or convincingly established by the evidence. In addition, in cases of this nature, the weight to be given the oral testimony of witnesses is primarily the function of the master who saw and heard the witnesses, and his findings, when approved by the chancellor, will not be disturbed unless from all the evidence it is made to appear that there is palpable error. Nothing in the record here leads to such a conclusion. In view of our holding as to the insufficiency of the evidence, we have refrained from any discussion relating to the adequacy of the consideration for the alleged contract. We recognize the fact, however, that Anna received less by her husband's will than she would have taken had he died intestate, or had she renounced the will of her husband. We are satisfied that the action of the trial court in dismissing the complaint for want of equity was proper.

It is contended that the testimony of defendants' witnesses, who testified as to Louis Monninger's intent to make a new will disinheriting his children and leaving everything to Anna, was improperly admitted. Plaintiffs rely on the rule that declarations or statements of a testator or grantor are not admissible for the purpose of invalidating either a

will or a deed unless such declarations tend to show the mental condition of the maker of the instrument. (*Mosher v. Thrush*, 402 Ill. 353.) We fail to see the applicability of the rule to this case, for the validity of Louis Monninger's will is not in issue. Furthermore, since plaintiffs failed to establish the contract for mutual wills by their evidence, the admission of the evidence complained of could not have prejudiced them. *Bremer v. Lake Erie and Western Railroad Co.* 318 Ill. 11.

Plaintiffs have raised numerous additional points, all of which are founded on the assumption that a contract for mutual or reciprocal wills had been entered into. Since we have determined there was no contract, these questions are no longer pertinent and need not be considered in this opinion.

For the foregoing reasons, the decree of the superior court dismissing the complaint is affirmed.

*Decree affirmed.*