In the Matter of the Estate of John F. McCaffrey, Deceased.
Claim of T. G. Tucker.
William McCaffrey, Administrator-Appellant, v. T. G. Tucker, Claimant-Appellee.

Gen. No. 48,115.

First District, First Division.
July 5, 1961.
Rehearing denied September 7, 1961.

Thomas Hart Fisher and Norman Crawford, of Chicago, for appellant.

Philip A. Winston, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Claimant, T. G. Tucker, filed his seventh class claim in Probate Court for $20,333.33 allegedly due from the estate of the deceased, John F. McCaffrey. The sum represented the balance of the purchase price due from McCaffrey for a one-third interest in a fire loss adjustment business, and was evidenced by a written sales agreement and a promissory note. The Probate Court allowed the claim in the sum of $15,666.-66. The administrator appealed to the Circuit Court, and upon a trial de novo the claim was allowed in the amount of $14,500.00, and the administrator appeals from the judgment of the Circuit Court.

Tucker had for many years been in the business of adjusting fire losses and repairing the damage caused by such losses. About two years prior to the transaction in question, Crannell, Tucker's nephew, sold his home and business in the East at Tucker's request and moved to Chicago to help Tucker in his business. About six months prior to the transaction, McCaffrey began working for Tucker, soliciting claims on a commission basis. In 1955, Tucker sold his business to Crannell and McCaffrey and retired.

The sale was evidenced by three separate instruments. A printed form entitled "conditional sales contract, note and statement of sale" and attached rider was executed by Tucker, Crannell and McCaffrey. It provided that Crannell and McCaffrey, in consideration for the purchase of the business from Tucker, agreed to pay him the "total time balance" (the language used in the form) of $17,500.00 in $3,500.00 yearly installments for a period of five years payable out of the future net profits of the business. McCaffrey alone signed a "judgment note" in the sum of $15,000.00 payable to Tucker in yearly installments of $3,000.00 beginning with January 1st, 1957. Crannell and McCaffrey entered into a "partnership agreement," also on a printed form, to carry on the business. Crannell was to contribute $10,000.00 and McCaffrey $5,000.00, and Crannell was to receive two-thirds and McCaffrey one-third of the net profits.

Lawrence E. Goeckel, the attorney who prepared the three documents in question, testified to the circumstances of the transaction over the administrator's objection. The administrator's main contention is that the consideration for the sale of the business is fully stated in the sale contract as $17,500.00, and that the parol evidence rule bars Tucker from varying this stated consideration by introducing testimony as to prior oral conversations to show that the note was also part of the consideration for the sale of the busi-

415

ness. While admitting that these instruments must all be construed together, he denies the existence of any ambiguity which would permit the introduction of extrinsic evidence regarding the parties' understanding.

■ If the parties here had merely executed the sale contract and partnership agreement, we would find the administrator's contention far more compelling. However, the note was executed on the same day and as part of the same transaction, and must therefore be read and construed together with the other instruments. Nelson v. Colegrove & Co. State Bank, 354 Ill 408, 188 NE 461. This the administrator admits, but he then proceeds to ignore the note because the other instruments do not mention it as part of the consideration, leaving it completely unexplained.

■ ■ In one instrument Crannell and McCaffrey agree to purchase Tucker's business for the sum of $17,500.00 with no money down and payments out of net profits, and at the same time McCaffrey alone signed a note to pay Tucker $15,000.00 with the printed words "consideration ⅓ sale of business" appearing on the face of the note. It is evident that neither document tended to explain the other even though they were executed at the same time. Where different instruments are executed between the same parties relating to the same subject matter, parol evidence is admissible to show that they do in fact relate to and are part of the same transaction, since such evidence tends merely to identify the real contract and not to vary or change its terms. Mayer v. Illinois Life Ins. Co., 211 Ill App 285.

The administrator cites Moffat Coal Co. v. Miller, 173 Ill App 408; McQuaid v. Baughman, 167 Ill App 430; and Warner v. Johns, 201 P2d 986 (Mont), in support of his contention, but we do not think they are relevant. The Moffat and Warner cases involve attempts to prove simultaneous oral agreements, and

the McQuaid case considered a subsequent written agreement to perform a pre-existing obligation.

Tucker's main witness was Attorney Lawrence E. Goeckel, who had handled matters related to the business for Tucker prior to the sale and who handled the sale of the business for Tucker and drew up the documents involved. He handled an occasional matter for the business for a short time after the sale, but had no interest in the outcome of the case at the time of the trials. He testified that he met with the parties in August, 1955, regarding the sale. Tucker then stated that the sale price was going to be $62,-500.00 and that McCaffrey was to pay over $20,000.00 and receive a one-third interest. He asked Tucker how McCaffrey was to pay the $20,000.00 and Tucker told him that McCaffrey would give a $15,000.00 note and that McCaffrey and Crannell would give Tucker a contract under which they would pay Tucker $17,-500.00 out of future profits of the business. Crannell and McCaffrey agreed that this was their understanding. Goeckel also testified that he asked Tucker how Crannell was to pay for the other two-thirds of the business, and Tucker said Crannell would only have to pay about $11,000.00 since Tucker had asked Crannell to move to Chicago and help with the business with the intention that Crannell would take over when Tucker retired. Tucker was also to lend the partnership $15,000.00 as working capital when it got started. He actually loaned them over $17,000.00 which was subsequently repaid. This latter arrangement was not mentioned in the written documents. Goeckel further testified that he drew up the agreements, and that he had printed "consideration ⅓ sale of business" on the note before McCaffrey signed it. He stated that all the papers were in precise compliance with the oral discussions. Throughout Goeckel's testimony, the administrator objected that the oral

417

testimony regarding these negotiations were inadmissible.

Elvera McLaughlin, who was employed by the partnership and by Crannell after McCaffrey's death to do general secretarial and bookkeeping work, also testified for Tucker. Both partners had twice signed signature cards allowing Crannell alone to sign checks on the partnership checking account. She testified that she met with Crannell and McCaffrey regarding a $500.00 check to Tucker signed by Crannell in June, 1957; McCaffrey told her it was a partial payment on a note he owed Tucker, and the $500.00 was posted to his drawing account. She further testified that, as McCaffrey requested, she made up a "sheet" so that he would have a personal record of all payments to Tucker. This "sheet" is in evidence, and shows the $500.00 payment.

Tucker's claim gives McCaffrey credit for the $500.-00 payment. The evidence of the witnesses Goeckel and McLaughlin adequately established McCaffrey's obligation on this note as part of the purchase price of the business.

The administrator next contends that Illinois courts give a very unwilling ear to the testimony of any attorney as to alleged oral conversations where an opposing party is deceased, because such oral conversations cannot effectively be controverted by reason of the decedent's death. In support of this contention he cites Monninger v. Koob, 405 Ill 417, 91 NE2d 411; Lasky v. Smith, 407 Ill 97, 94 NE2d 898, and other cases. A review of these cases shows that this rule applies where the witness is shown to be an interested person. The evidence in the case at bar reveals that Tucker left for California immediately after the sale of his business and that Goeckel has not represented him since that time. Also, Goeckel represented both McCaffrey and Crannell in their partnership operation,

418

and has no financial or other interest in the outcome of the case. We hold that a lawyer is not rendered incompetent as a witness under such circumstances unless he has a pecuniary interest in the litigation. Slape v. Fortner, 3 Ill App2d 339, 122 NE2d 57.

■ The administrator also argues the unreliability of the witnesses Goeckel and McLaughlin because Goeckel represented one of the parties in the original transaction and because he finds certain inconsistencies in McLaughlin's testimony concerning the partnership tax return. We have pointed out that Goeckel has no interest in the case; certainly neither witness is barred from testifying, and whatever merit the administrator's argument has goes to the weight or credibility of their testimony. This is primarily a question for the trial judge who observed the witnesses and heard them testify, Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518; Rude v. Seibert, 22 Ill App2d 477, 161 NE2d 39. Both the Probate Judge and the Circuit Judge evidently believed these witnesses, and we have no reason to find otherwise. Other points are urged by the administrator which we do not think it necessary to consider. For the reasons stated above, the judgment of the Circuit Court is affirmed.

Affirmed.

KILEY, P. J. and MURPHY, J., concur.