*In re* MARRIAGE OF MAUREEN RAYFIELD, Petitioner and Counterrespondent-Appellee, and SCOTT A. RAYFIELD, Respondent and Counterpetitioner-Appellant.

First District (4th Division)   No. 1—90—3241

Opinion filed October 24, 1991.

Marshall J. Auerbach and Paul L. Feinstein, both of Marshall J. Auerbach & Associates, Ltd., of Chicago, for appellant.

Timothy M. Daw and Anita B. Ward, both of Schiller, Du Canto & Fleck, of Chicago (Sarane C. Siewerth, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Respondent and counterpetitioner Scott Rayfield (Scott) appeals from the trial court's entry of a preliminary injunction that prohibits him from selling half of an interest in corporate stock pending disposition of the parties' cross-petitions for dissolution of their marriage, distribution of their marital assets, and related matters. Because we

conclude that the trial court's entry of the preliminary injunction order was in error under the facts of this case, we reverse and remand.

The record reveals the following pertinent facts. Scott and his wife, Maureen, were married in September 1984, and one child was born to the marriage. They filed cross-petitions for dissolution of their marriage in July and September 1990. Thereafter, Maureen filed a motion for a preliminary injunction to prevent Scott from selling a 50% interest in Pioneer Wholesale, Inc. (the Pioneer stock). In an affidavit to support this motion, Maureen stated that she believed Scott intended to sell the Pioneer stock at less than its fair market value.

At a hearing on the preliminary injunction motion, Maureen testified that Scott had informed her that he had an investor who was anxious to buy the Pioneer stock, and that he wanted to sell the stock before Maureen would have an opportunity to value the asset for purposes of the parties' pending divorce litigation. According to Maureen, Scott told her that he was not going to reveal anything about his business to anyone. He also advised her that he would not sell the Pioneer stock for less than its fair market value.

When asked why she feared that Scott might sell the asset for less than its fair market value, as she had stated in her affidavit, Maureen responded that in the past, she "was never involved in any of the decision-making about where proceeds went to, so that I would not be given information." Maureen explained that Scott had previously sold stock in another company, Wisconsin Tool and Stamping Company (the Wisconsin Tool stock), but had not told her that he was selling the stock or how he had disposed of the sale proceeds. Maureen also testified that Scott had refused to inform her of the terms of the proposed sale of the Pioneer stock. The record reflects that Maureen had received all temporary maintenance and child support payments due to date from Scott, and she testified that she had approximately $800 in the bank. The remaining marital asset, according to Maureen, was a marital residence valued at approximately $250,000.

Scott testified at the preliminary injunction hearing that he purchased the Pioneer stock for $1,000 in 1988. This purchase money derived from proceeds of the sale of the Wisconsin Tool stock. Scott stated at the time of the preliminary injunction hearing, the book value of the Pioneer stock was approximately $900,000. Scott testified that he would suffer a hardship if the court entered a preliminary injunction preventing him from selling the Pioneer stock. He explained that such a ruling would effectively prohibit him from entering into any business dealings where he could sell the stock. Scott testified

that by requiring prior court permission to sell the Pioneer stock, he could lose the buyer, and that any potential buyer would offer a low price if the buyer were aware of court-imposed conditions on the sale of the Pioneer stock.

Scott testified that the Pioneer company was engaged in the business of secondary wholesaling of grocery goods from manufacturers. Scott explained that manufacturers had threatened to use a uniform pricing program throughout the country which could jeopardize the company's ability to operate. Scott stated that if the uniform pricing program appeared imminent, he would have to sell his stock quickly, and that the preliminary injunction order would prevent such a sale of the stock. Scott testified that he would likely sustain several hundred thousand dollars in damages if the injunction were in place or if he were required to give prior notice of the sale to Maureen or her attorneys.

Scott also testified that he did not make any threats to Maureen to dissipate assets. He testified that he had not told Maureen that he had an investor anxious to purchase the Pioneer stock, but testified that there had been a meeting regarding possibly selling part of the company. Scott stated that he would not sell the Pioneer stock for less than its fair market value, because that would harm him as well as Maureen. He also acknowledged that he had not discussed the sale of the Wisconsin Tool stock with Maureen before the transaction was undertaken or completed.

The trial court noted that Scott's testimony indicated that "he wants the instant ability to sell stock unfettered by any court restriction." The court also determined that "even though there has been no testimony or evidence offered that [Scott] has in the past disposed of any asset for less than its fair market value, *** there is testimony that he has taken sale proceeds and used them without the consent or the knowledge of his spouse [Maureen], which is in effect a 'concealment.' " The trial court also took into account "the fact that a sale at less than a fair market value could result in the reduction of the value [in the Pioneer stock] *** asset that the trial judge will have to determine as either marital or non-marital."

In light of these considerations, the court's written order found that irreparable injury would occur if Scott were to sell all of the Pioneer stock without Maureen's prior knowledge or consent, that Maureen had a possible right or interest in the stock which was deserving of protection, that Maureen's legal remedy would be inadequate if Scott were allowed to sell all the Pioneer stock absent her prior

knowledge or consent, and that the balance of hardships favored Maureen.

On these bases, the trial court entered a preliminary injunction order prohibiting Scott from selling half of the Pioneer stock. With respect to the remaining half of the Pioneer stock, the court directed that if Scott "elects to sell said portion, [he] shall provide to counsel for Maureen Rayfield within ten days of any such transaction the identity of the purchaser or purchasers, the sales price of said portion, the amount of stock sold, the expenses of sale incurred, the net figure received in the distribution, where the funds were deposited, and disposition of the aforesaid proceeds." The court directed that Scott "shall have the right to dispose of one-half (½) of his interest in [the Pioneer stock] as he deems appropriate." The court also noted, however, that "nothing contained in this Order shall prohibit the trier of fact at the trial of this action to deem such a transaction as a dissipation or dissipations." Scott appeals from the trial court's preliminary injunction order.

■ In order to show entitlement to a preliminary injunction, the moving party bears the burden of showing (1) a certain and clearly ascertainable right in need of protection, (2) irreparable injury without injunctive relief, (3) an absence of adequate legal remedies, and (4) a likelihood of success on the merits. The trial court's decision to issue a preliminary injunction, based upon its assessment of the evidence with respect to these factors, is subject to reversal on appeal if the ruling is an abuse of discretion as against the manifest weight of the evidence. See, *e.g.*, *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 483 N.E.2d 1271; *In re Marriage of Weber* (1989), 182 Ill. App. 3d 212, 537 N.E.2d 1024; see also Ill. Rev. Stat. 1989, ch. 40, par. 501(a)(2)(i).

The trial court in the instant cause acknowledged that there was no evidence in the record to show that Scott would sell the Pioneer stock at less than its fair market value. Notwithstanding this factual finding, the trial court determined that irreparable injury would occur if Scott were to sell all of the Pioneer stock without Maureen's prior knowledge or consent, that Maureen's legal remedy would be inadequate if Scott were allowed to sell all of the Pioneer stock absent her prior knowledge or consent, and that the balance of hardships favored Maureen. In light of these considerations, the trial court determined that Scott should be prohibited from selling half of the Pioneer stock. The court further concluded that Scott should be permitted to sell the remaining half of the Pioneer stock to whomever he chose, but that

Scott would be required to account to Maureen regarding the terms and proceeds of such sale.

■ Based upon our review of the record, we conclude that the trial court's decision was in error. The court's perceived threat to Maureen's potential interest in the Pioneer stock was not that Scott would sell the asset for less than its fair market value, but that Scott would conceal the terms and proceeds of such a sale. This perceived harm to Maureen's potential interest in the asset was adequately protected by the court's instructions with respect to half of the Pioneer stock which the court determined Scott should be free to sell, *i.e.*, that Scott give a full accounting to Maureen, within 10 days after sale, of the terms and distribution of proceeds from the sale. We are unable to discern why these same conditions, if applied to the entire interest in the Pioneer stock instead of half of the asset as ordered by the trial court, would have been inadequate to protect Maureen's potential interests in the Pioneer stock.

Moreover, there is nothing in the record to dispute Scott's assertion that market conditions might compel that he sell the Pioneer stock in a short period of time. There is also nothing in the record to contradict Scott's testimony that the failure to move quickly in the sale of the asset could cause the loss of thousands of dollars to the parties. Maureen's only stated concern was that Scott might conceal the terms and proceeds from the sale, not that his sale thereof would be financially ill-advised.

Maureen contends on appeal that the trial court's preliminary injunction order was necessary in order to prevent Scott's possible dissipation of proceeds of the sale of the Pioneer stock. However, the record reflects that Scott has paid temporary maintenance and child support to Maureen, and there is nothing to demonstrate that Scott would dissipate sale proceeds to the detriment of the marital estate. (See *In re Marriage of Grauer* (1985), 133 Ill. App. 3d 1019, 479 N.E.2d 982; *In re Marriage of Schmidt* (1983), 118 Ill. App. 3d 467, 455 N.E.2d 123.) In addition, if Scott dissipates the sale proceeds, the trial court is empowered to order that he reimburse Maureen for such dissipation, and/or that Maureen be awarded a greater portion of the marital estate to compensate her for the dissipation. (See Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(1); *In re Marriage of Turzitti* (1987), 161 Ill. App. 3d 822, 515 N.E.2d 316.) On this record, Maureen's speculative concern over possible dissipation of proceeds from the sale of Pioneer stock is insufficient ground for the court's award of the preliminary injunction order entered in the instant cause. See *In re Marriage of Strauss* (1989), 183 Ill. App. 3d 424, 539 N.E.2d 808.

In light of all of these considerations, we reverse the trial court's preliminary injunction order and remand for further proceedings.

For the reasons stated, the order of the circuit court of Cook County is reversed, and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.