*In re* ESTATE OF GRACE W. MAHER, Deceased (Edward F. Maher, Petitioner-Appellant, v. Mary Anne King, Indiv., as Heir, as Legatee, and as Ex'r under a purported Will of Grace W. Maher, Respondent-Appellee).

First District (4th Division)   No. 1—91—1748

Opinion filed August 20, 1992.—Rehearing denied December 3, 1992.

Paul D. Keller, of Wilmette, and G. Kent Yowell, of Northbrook, for appellant.

Maureen Jeannette Kelly, of Kelly, Kelly & Kelly, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

The decedent, Grace Maher, died on February 19, 1990, at the age of 80. She was predeceased by her husband, Lawrence Maher, who died on November 4, 1988. Grace and Lawrence had no children. Petitioner, Edward Maher, is the nephew of Lawrence; respondent, Mary

Anne King, is the niece of Grace Maher. On March 13, 1990, an instrument dated December 22, 1988, was admitted to probate as Grace's last will. Respondent was the sole beneficiary under that will and was named and appointed as its executor. On April 4, 1990, petitioner instituted this action to contest the will. The third amended petition, the subject of this appeal, contained four counts alleging that the will was invalid due to (1) lack of testamentary capacity by Grace, (2) the exercise of undue influence by respondent, (3) fraud, and (4) the existence of irrevocable, mutual and reciprocal wills executed by Grace and Lawrence in 1987.

Respondent filed a motion to dismiss the petition in its entirety for failure to allege facts sufficient to state a cause of action. At a hearing on April 24, 1991, the trial court denied the motion to dismiss count I, but granted the motion as to the remaining three counts. Petitioner has abandoned his appeal from the dismissal of count III, alleging fraud. Thus, we consider only the sufficiency of count II, alleging undue influence, and count IV, alleging that mutual irrevocable wills were executed by Grace and Lawrence in 1987 pursuant to a contract between them not to revoke those wills.

The petition contains the following allegations: On May 13, 1987, while residents of the Alexian Brothers retirement facility in Milwaukee, Wisconsin, Lawrence and Grace executed wills (the 1987 wills) in which each devised his or her estate to the other and, upon the death of the surviving spouse, to petitioner and respondent in equal shares. Petitioner was named as executor in both wills.

On November 4, 1988, Lawrence died at St. Michael's Hospital in Milwaukee, where he and Grace were both patients. At the time of Lawrence's death, Grace was confined in a wheelchair and was unable to care for herself. The petition alleged that attending physicians at St. Michael's Hospital diagnosed Grace as suffering, *inter alia,* from senile dementia, and advised the creation of a conservatorship because Grace had become incompetent and unable to handle her own affairs. In mid-November 1988, respondent travelled to Milwaukee and had Grace transported by ambulance to Evanston Hospital in Evanston, Illinois. Respondent took possession of all of the personal effects and papers of Lawrence and Grace, including the 1987 wills. Grace was diagnosed at Evanston Hospital as suffering from depression, dementia and congestive heart failure. On November 23, 1988, respondent had Grace transported to Bethany Methodist Terrace Home in Morton Grove, Illinois. At the time of her removal from Evanston Hospital, Grace was oriented only to her own person and could not remember either long- or short-term events without coach-

ing. During the admission interview at Bethany, Grace described her daily activities as including getting up and going to work, despite that she was an invalid and had not been employed for several years.

The petition further alleged that on November 26, 1988, respondent caused Grace to execute a living will, which was witnessed by respondent's close friend, Nancy Mayer. Later that same day, respondent executed a "do not resuscitate" order for Grace. In December 1988, respondent asked Nancy to recommend an attorney for the purpose of drafting a will for Grace. Respondent consulted with attorney George Kelly, since deceased, who prepared the will at issue. On December 22, 1988, Grace signed page two of the three-page document in the presence of respondent and two co-workers of respondent who accompanied respondent to the Bethany nursing home and signed page three of the will as witnesses. The will named respondent as executor and sole beneficiary of Grace's estate.

Grace was subsequently transferred to Glenbrook Hospital where, on February 19, 1990, she died. The autopsy report stated that Grace's primary disease was arteriosclerosis of the brain, supporting the clinical diagnosis of senile dementia. The immediate cause of death was severe bronchopneumonia.

The petition also contained allegations that six years earlier, respondent told petitioner that she hated Lawrence and Grace but was "counting on" their money; that when respondent arrived at St. Michael's Hospital in Milwaukee, Grace ordered her away, charging that respondent was only "after [her] money"; that in relating this incident to petitioner, respondent expressed her hatred of Grace; that when told by petitioner, in mid-November 1988, that Lawrence's estate passed to Grace, respondent stated, "that's all I need to know"; and that respondent made statements to petitioner that she and he had been named co-beneficiaries of Grace's estate.

Count II of the petition concluded by alleging that a fiduciary relationship existed between Grace and respondent by reason of respondent's assumption of a position of dominance over Grace's person and property and the resulting dependence by Grace, in her weakened physical and mental condition, upon respondent. Petitioner alleged that respondent procured the preparation of the will at issue, under which she receives a substantial benefit, *i.e.*, the entire estate; and that respondent exercised undue influence to cause Grace to sign the will, which was contrary to an agreement with her late husband and her wishes.

Petitioner contends that the petition alleged sufficient facts to raise a presumption of undue influence by respondent in the procure-

ment and execution of Grace's will. Petitioner argues that the trial court therefore erred in dismissing count II for failure to state a cause of action.

■ Undue influence necessary to invalidate a will is that influence which prevents the testator from exercising her own free will in the disposition of her estate. It must be directly connected with the execution of the instrument, operate at the time it was made, and be directed toward procuring the will in favor of a particular party or parties. *Peters v. Catt* (1958), 15 Ill. 2d 255, 154 N.E.2d 280.

■ A presumption that a will was executed as a result of undue influence on the testator arises if: (1) a fiduciary relationship existed between the testator and a person who receives a substantial benefit under the will; (2) the testator was in a dependent situation and the beneficiary was in a position of dominance over the testator; (3) the testator reposed confidence and trust in the beneficiary; and (4) the beneficiary was instrumental or participated in the procurement and execution of the will. (*Herbolsheimer v. Herbolsheimer* (1975), 60 Ill. 2d 574, 328 N.E.2d 529; *Peters v. Catt*, 15 Ill. 2d 255, 154 N.E.2d 280; *In re Estate of Jessman* (1990), 197 Ill. App. 3d 414, 554 N.E.2d 718.) Old age and the physical or mental disability of the testator are also material circumstances on the issue of undue influence. *Peters v. Catt*, 15 Ill. 2d 255, 154 N.E.2d 280; *Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88, 234 N.E.2d 91.

■ A fiduciary relationship may exist as a matter of law, *e.g.*, as between attorney-client, guardian-ward, trustee-beneficiary and the like, or it may arise from a relationship which is moral, social, domestic or personal in its origin. (*Swenson v. Wintercorn*, 92 Ill. App. 2d at 100.) Factors to be considered in determining whether a fiduciary relationship in fact existed include the degree of kinship, disparity in age, health, mental condition and education, and the extent to which the servient party entrusted the handling of her affairs to the dominant party. *Swenson v. Wintercorn*, 92 Ill. App. 2d at 100.

■ In the instant case, petitioner alleged, in count I of the amended petition, that Grace lacked testamentary capacity to execute a valid will. He alleged that Grace was depressed and disoriented and that an attending physician in Milwaukee advised the creation of a conservatorship for her following the death of her husband, Lawrence. Petitioner alleged that the primary cause of Grace's mental disability was senile dementia, and included passages from the autopsy report stating that conclusion. The trial court denied respondent's motion to dismiss count I, and thus, the issue of whether Grace

possessed the requisite capacity to make a valid will in the first instance remains pending.

Count II, alleging undue influence, incorporated the allegations of count I and alleged that respondent caused Grace's removal by ambulance from Milwaukee to the Chicago area, and took possession of all of Grace's and Lawrence's belongings and papers, including their 1987 wills, which allegations respondent admits. Petitioner further alleged that respondent thereafter made all decisions regarding Grace's person and her medical and nursing home care, which respondent also does not dispute; and that she caused Grace to execute a living will, which was witnessed by respondent's close friend, following which respondent executed a "do not resuscitate" order for Grace.

Respondent argues that there are no allegations that Grace entrusted her with the handling of her business and financial affairs or that Grace reposed trust and confidence in respondent. As noted, however, respondent does not deny that she took possession of Grace's possessions and papers and made all decisions concerning her care. The gist of count II is that Grace was physically and mentally incapacitated and was involuntarily made dependent upon respondent by respondent's assumption of a position of dominance over Grace. In our view, petitioner's allegations are sufficient to state the existence of a fiduciary relationship.

The petition further alleged that shortly after Grace's return from Milwaukee, respondent consulted with an attorney for the purpose of drafting a new will for Grace. That attorney drafted the will at issue in which respondent was named executor and sole beneficiary. The petition alleged that respondent brought the will, and two co-workers to act as witnesses, to the nursing home where Grace was residing, and was present in the room when Grace signed the will.

The supreme court in *Mitchell v. Van Scoyk* (1953), 1 Ill. 2d 160, 115 N.E.2d 226, noted that the active agency of the chief beneficiary in procuring a will, especially in the absence of those having an equal claim on the estate of a testator whose mind is debilitated by age and illness, is a circumstance indicating the probable exercise of undue influence; this presumptive undue influence arises irrespective of the existence of a fiduciary relationship between the testator and the beneficiary. See also *Schmidt v. Schwear* (1981), 98 Ill. App. 3d 336, 424 N.E.2d 401; *Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88 (even absent the existence of a fiduciary relationship, where one procures the execution of a will largely benefitting herself to the detriment of others having an equal claim to the bounty of the testator, who is in-

firm due to age or illness, a presumption arises that she exercised undue influence).

The petition adequately alleged the existence of a fiduciary relationship. That relationship, coupled with the allegations that the will was prepared by an attorney engaged by respondent, and the fact that respondent is the sole beneficiary named in that will are sufficient to state a cause of action against respondent for the exercise of undue influence.

Petitioner has also included in the record a "first current account" statement filed by respondent, as executor of the estate, on June 27, 1991, after notice of appeal had been filed from the dismissal of counts II and IV. The statement includes an entry showing payment of $10,000 to respondent for "balance of guardian fees." Petitioner argued in his original brief that this supports an inference that respondent assumed the role of guardian of Grace. Petitioner further argues in his reply brief that respondent obtained a general power of attorney from Grace on the day respondent caused Grace's removal from Milwaukee. He maintains that these facts were not discovered prior to his third amended petition because of respondent's failure to comply with a discovery request that she appear for a deposition. Petitioner contends that the first current account filed by respondent showing payment to her of guardian fees constitutes a judicial admission that she was Grace's guardian and establishes the existence of a fiduciary relationship as a matter of law.

■■ A power of attorney creates a fiduciary relationship as a matter of law (*In re Estate of Jessman* (1990), 197 Ill. App. 3d 414, 554 N.E.2d 718; *Lemp v. Hauptmann* (1988), 170 Ill. App. 3d 753, 529 N.E.2d 203), as does the relationship of guardian and ward (*In re Estate of Osborn* (1984), 128 Ill. App. 3d 453, 470 N.E.2d 1114; *Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88, 234 N.E.2d 91). Because this cause must be remanded for further proceedings on count II on the ground that the petition, as it was presented to the trial court, was sufficient to allege a fiduciary relationship in fact, this argument should be addressed by the parties upon remand to the trial court.

Petitioner also contends that count IV, alleging that Grace and Lawrence executed irrevocable, mutual and reciprocal wills, was improperly dismissed for failure to state a claim. He asserts that count IV sufficiently alleges mutual wills executed pursuant to a contract not to revoke. We disagree.

■■ Mutual wills are the separate instruments of two or more persons, which are reciprocal in their terms, and by which each testator makes a testamentary disposition in favor of the other. *Monniger v.*

*Koob* (1950), 405 Ill. 417, 91 N.E.2d 411; *Frese v. Meyer* (1945), 392 Ill. 59, 63 N.E.2d 768.) Whether or not mutual wills are revocable by either party depends on the circumstances and understanding upon which they were executed. (*Monninger v. Koob*, 405 Ill. at 422.) One of the main attributes of a will is that the will is ambulatory and may be revoked at any time by the testator during his or her lifetime. Thus, mutual wills which deprive the parties of that right to revoke must be established by clear and satisfactory evidence of a contract not to revoke. *Monninger v. Koob*, 405 Ill. at 422.

■ If the circumstances establish that the mutual reciprocal wills were executed pursuant to such a contract, then they become irrevocable upon the death of one of the testators. (*Felson v. Scarpelli* (1988), 165 Ill. App. 3d 869, 520 N.E.2d 801.) Mutual wills, however, are not, generally, of themselves, sufficient evidence of a contract, and the consideration to support the alleged contract must come from outside the wills. (*Monninger v. Koob*, 405 Ill. at 422; *Frese v. Meyer*, 392 Ill. at 65.) The mere existence of mutual wills does not give rise to a presumption of a contract, nor are they evidence that such a contract, in fact, existed. (*Proctor v. Handke* (1983), 116 Ill. App. 3d 742, 452 N.E.2d 742.) Although a person may enter into a contract to dispose of her property by will in a particular manner, such contracts are not favored. Consequently, the courts require clear and convincing evidence that the mutual wills were executed pursuant to a binding contract to be irrevocable. *Monninger v. Koob*, 405 Ill. at 423; *Proctor v. Handke*, 116 Ill. App. 3d at 747.

■ Count IV of the petition before us alleges that the 1987 wills of Grace and Lawrence were mutual and reciprocal in that each devised all property to the surviving spouse, but if the other spouse predeceased the testator, then the property was to be divided equally between petitioner and respondent. The petition alleged that Grace and Lawrence worked together to acquire all of the property, that it was their mutual desire that the survivor enjoy the fruits of their labor during his or her life, but that their property should ultimately descend to both parties' families following both their deaths. The petition asserts that the wills were executed pursuant to an oral contract between Grace and Lawrence and that it was their understanding and agreement that revocation by the surviving spouse so as to disinherit the relative of the other would be a violation of their agreement. In support of his assertion, petitioner alleged that on the day the 1987 wills were executed, Grace and Lawrence stated to their attorney and his assistant that each wanted his or her property to go to the other

and then to their respective families in equal shares, and that the plan they agreed upon was fair in all respects.

These allegations are factually insufficient to allege the existence of an oral contract to execute irrevocable wills. Count IV merely alleges that Grace and Lawrence executed mutual and reciprocal wills which named Grace's niece and Lawrence's nephew as contingent co-beneficiaries. Petitioner has alleged no facts which would establish an agreement that neither testator could revoke the will after the death of the other spouse. The mere allegation that the decedents expressed to their attorney their desire that any property remaining upon the death of the second spouse be divided between their families and that the plan they agreed upon was fair would not, if proven, suffice to establish the existence of an oral contract not to revoke the wills. While Grace and Lawrence apparently concurred in naming petitioner and respondent as contingent co-beneficiaries, as each of the 1987 wills provides, there is nothing in the statement to the attorney or in the wills themselves which would prove that they further agreed that neither of them had the right of revocation. The wills contain no reference to each other, nor do they contain any language from which an oral contract not to revoke can be inferred. Each will gives all of the testator's property to the other spouse, without condition or qualification. See *Monninger v. Koob*, 405 Ill. 417, 91 N.E.2d 411; *Proctor v. Hadke*, 116 Ill. App. 3d 742, 452 N.E.2d 742.

Absent specific facts to show that the decedents entered into an oral contract to make mutual and reciprocal wills which became irrevocable upon the death of one of the spouses, the complaint fails to state a claim for which relief may be granted. Under these circumstances, the trial court properly exercised its discretion in dismissing count IV of the amended petition.

For the reasons stated, the portion of the order of the trial court dismissing count II of petitioner's amended petition to contest the purported will at issue on the ground that it was the product of undue influence is reversed; the portion of the order dismissing count IV of petitioner's amended petition alleging the existence of irrevocable mutual and reciprocal wills is affirmed; and the cause is remanded to the trial court for further proceedings.

Affirmed in part, reversed in part, and remanded.

JIGANTI, P.J., and LINN, J., concur.