*In re* MARRIAGE OF GERARD V. CENTIOLI, Petitioner-Appellee, and DEBORA C. CENTIOLI, Respondent-Appellant.

First District (4th Division)   No. 1—01—2043

Opinion filed November 27, 2002.

Michael J. Berger, Leon I. Finkel, and Sharon S. Mobley, all of Kalcheim, Schatz & Berger, of Chicago, for appellant.

Sandra R. Murphy and William P. Schuman, both of McDermott, Will & Emery, and Michael E. Fox, of Fox, Hefter, Swibel, Levin & Carroll, both of Chicago, for appellee.

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Petitioner, Gerard V. Centioli, filed a petition for dissolution of marriage. During the pendency of the dissolution proceedings, he removed his wife, respondent, Debora C. Centioli, as the beneficiary of his *inter vivos* revocable trust. Thereafter, Debora filed a petition for injunctive relief pursuant to section 501(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/501(a)(2) (West 2000)), to compel Gerard to restore his estate plan to the status that existed prior to the institution of the dissolution proceedings, and to restrain Gerard from disposing of his property except in the usual course of business or for the necessities of life. The trial court granted Gerard's motion to dismiss the petition pursuant to section 2—615 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2000)) for failure to state a cause of action upon which relief could be granted. This appeal raises an issue of first impression as to whether the court can enjoin a spouse from changing the beneficiary designation of an *inter vivos* revocable trust while dissolution of marriage proceedings are pending. Additionally, we consider whether Debora has pled sufficient facts to enjoin Gerard from transferring or disposing of marital assets. For the following reasons, we answer both questions in the negative.

Debora and Gerard were married on September 8, 1979. Subsequently, in 1987, the parties created separate *inter vivos* revocable trusts for estate planning purposes under which each party designated the other as trust beneficiary upon their deaths. The trusts were accompanied by a trust agreement. Under Gerard's trust, he was named as settlor and trustee. Article 3 of the trust agreement provided that

"[d]uring his lifetime, [t]rustor may alter, amend or revoke this instrument, in whole or in part, and withdraw from the operation of the trust all or any part of the trust estate." The trust was originally funded with $100. In addition, the parties both executed wills that purportedly provide for each of their estates to pour over into their respective trusts upon their deaths.

In January 1998, Gerard filed a petition for dissolution of marriage. During the pendency of the dissolution proceedings, Gerard removed Debora as the beneficiary of his trust and instead designated his then-living descendants as the beneficiaries. In response, Debora filed a petition for temporary restraining order, preliminary injunction and other relief pursuant to section 501(a)(2) of the Act to maintain the status quo with regard to the marital assets. Therein she sought to compel Gerard to restore his estate plan to the status that existed prior to the institution of the dissolution of marriage proceedings by reinstating Debora as the beneficiary, and sought to restrain Gerard from transferring, encumbering, concealing or otherwise disposing of any property except in the usual course of business or for the necessities of life.

Debora alleges therein that the parties agreed to have mutual wills and that they may not unilaterally revoke the provisions of the wills. Additionally, she maintains that pursuant to section 503(e) of the Act (750 ILCS 5/503(e) (West 2000)), her rights to the marital property vested at the time the dissolution proceedings commenced. She states in her attached affidavit that there are significant assets titled solely in Gerard's name that constitute vested marital property. These assets either are already registered in the name of the trust or will pour over into the trust in the event of his death during the pendency of the dissolution proceedings. Without the requested relief, Debora alleges that she would be permanently divested of all of her interests in the significant marital property that forms the corpus of Gerard's trust. The trial court granted Gerard's section 2—615 motion to dismiss the petition for failure to state a claim upon which relief could be granted. Debora filed a timely interlocutory appeal pursuant to Supreme Court Rule 307(a)(1). 166 Ill. 2d R. 307(a)(1).

■ On appeal, Debora contends that the trial court erred in granting Gerard's motion to dismiss because she has pled sufficient facts to establish the requirements necessary for preliminary injunctive relief. A motion to dismiss under section 2—615 (735 ILCS 5/2—615 (West 2000)) tests the legal sufficiency of a pleading. *Brogan v. Mitchell International, Inc.*, 181 Ill. 2d 178, 183, 692 N.E.2d 276, 277 (1998). When the trial court is presented with a motion to dismiss, it must determine whether the complaint sets forth sufficient allegations that,

if established, could entitle the plaintiff to relief. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207, 1214 (1996). The judge must accept all well-pleaded facts in the complaint as true and draw reasonable inferences from those facts that are favorable to the plaintiff. *Bryson*, 174 Ill. 2d at 86, 672 N.E.2d at 1213. We review the matter *de novo. Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 9, 689 N.E.2d 205, 211 (1997).

■ Debora requests relief pursuant to section 501(a)(2) of the Act. That section provides, in pertinent part:

"(a) Either party may move for:
\*\*\*

(2) a temporary restraining order or preliminary injunction, accompanied by affidavit showing a factual basis for any of the following relief:

(i) restraining any person from transferring, encumbering, concealing or otherwise disposing of any property except in the usual course of business or for the necessities of life \*\*\*; [or]
\* \* \*

(iv) providing other injunctive relief proper in the circumstances[.]" 750 ILCS 5/501(a)(2) (West 2000).

■ A preliminary injunction is an extraordinary remedy that is applicable only to situations where an extreme emergency exists and serious harm would result if not issued. *New York Life Insurance Co. v. Sogol*, 311 Ill. App. 3d 156, 158, 724 N.E.2d 105, 107 (1999). Generally, a party seeking a preliminary injunction must demonstrate that it: (1) has a clearly ascertainable right that needs protection; (2) will suffer irreparable harm without the protection; (3) has no adequate remedy at law; and (4) is likely to succeed on the merits. *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 789, 772 N.E.2d 768, 779 (2002); *In re Marriage of Schmidt*, 118 Ill. App. 3d 467, 470, 455 N.E.2d 123, 125 (1983). With these principles in mind, we examine the issues before us.

■ In count I of her petition, Debora seeks to compel Gerard to restore his estate plan to the status that existed prior to the dissolution proceedings pursuant to section 501(a)(2)(iv). Debora contends that she has sufficiently pled a clearly ascertainable right in need of protection. Initially, she maintains that she has a right to be reinstated as the beneficiary of Gerard's "pour-over" trust because she and Gerard executed mutual wills and he may not unilaterally revoke the provisions of his will. Mutual wills are the "separate instruments of two or more persons, which are reciprocal in their terms, and by which each testator makes a testamentary disposition in favor of the other." *In re Estate of Maher*, 237 Ill. App. 3d 1013, 1019, 606 N.E.2d 46, 51

(1992). One of the main attributes of a will is that it is changeable and may be revoked at any time by the testator during his lifetime. Thus, mutual wills that deprive a party of the right of revocation must be established by clear and convincing evidence of a binding contract not to revoke. *In re Estate of Maher*, 237 Ill. App. 3d at 1020, 606 N.E.2d at 51-52. The mere existence of mutual wills does not give rise to a presumption of such a contract, nor are they evidence that such a contract, in fact, existed. *In re Estate of Maher*, 237 Ill. App. 3d at 1020, 606 N.E.2d at 52.

■ Debora's allegations are wholly insufficient to allege either the existence of mutual wills or a binding contract regarding revocation. She has not attached a copy of the wills, but merely makes the conclusory allegation that the parties' concurrent execution of their estate plans and their concurrent revisions evidence an intent to have mutual wills. While she alleges that correspondence from their attorney states that "the terms of your proposed wills and trust agreements must be read together," this merely means that the provisions of the wills must be read in conjunction with the provisions in the trusts. Furthermore, Debora has failed to allege any facts outside the will that would establish an agreement that neither testator could unilaterally revoke the will. Rather, the terms of their trusts specifically provide that during their lifetime, they could revoke the trusts in whole or in part. Absent specific allegations to show that the parties entered into a contract to make mutual wills affecting the right of revocation, Debora's argument must fail.

Additionally, Debora alleges under count I that she has a clearly ascertainable right to "share in the parties' marital assets in the event of Gerard's death during the pending dissolution of marriage proceedings." Her argument necessarily involves an understanding of the intersection between her marital right to a division of property in divorce under the Act versus her spousal right to property at Gerard's death under the Probate Act of 1975 (755 ILCS 5/1—1 *et seq.* (West 2000)). We first consider Debora's rights under the Act and the court's authority during the pendency of the dissolution proceedings.

■ Section 503(d) of the Act calls for the equitable distribution of both spouses' property on divorce and establishes the concept of marital property. 750 ILCS 5/503(d) (West 2000). Pursuant to section 503(b) of the Act, "all property acquired by either spouse after the marriage and before a judgment of dissolution *** is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership." 750 ILCS 5/503(b) (West 2000). Further, section 503(e) provides in pertinent part that "[e]ach spouse has a species of common ownership in the marital property

which vests at the time dissolution proceedings are commenced and continues only during the pendency of the action." 750 ILCS 5/503(e) (West 2000). Thus, during the pendency of the divorce proceedings Debora has a vested interest in all marital property regardless of which party holds title to it. 750 ILCS 5/503(e) (West 2000); *Hofmann v. Hofmann*, 94 Ill. 2d 205, 446 N.E.2d 499 (1983) (recognizing the "common enterprise" theory of marriage).

■ While the term "property" has been defined as "a word of the very broadest import, connoting any tangible or intangible *res* which might be made the subject of ownership" (*In re Marriage of Goldstein*, 97 Ill. App. 3d 1023, 1026, 423 N.E.2d 1201, 1203 (1981)), in order to be property within the ambit of the Act, "the *res* must be in the nature of a present property interest, rather than a mere expectancy interest" (*In re Marriage of Weinstein*, 128 Ill. App. 3d 234, 244, 470 N.E.2d 551, 559 (1984)). An expectancy interest is the " 'interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent *** or of a beneficiary designated by a living insured who has a right to change the beneficiary.' " *In re Marriage of Weinstein*, 128 Ill. App. 3d at 244, 470 N.E.2d at 559, quoting *In re Marriage of Pesheck*, 89 Ill. App. 3d 959, 964, 412 N.E.2d 698, 702 (1980).

■ Here, Gerard has a revocable trust in the nature of a will substitute which provides that his estate will pour over into his trust upon his death. Thus, Debora's right to a beneficial interest in Gerard's trust was but a mere expectancy. While Gerard's change in beneficiary may be a relevant factor in determining an equitable distribution of property (see *In re Marriage of Eddy*, 210 Ill. App. 3d 450, 460, 569 N.E.2d 174, 181 (1991)), it cannot be characterized as a vested property interest within the ambit of the Act. Consequently, her beneficial interest is not a clearly ascertainable right to be protected.

Furthermore, while Debora argues that she only seeks to maintain the status quo, the effect of requiring Gerard to replace her as the beneficiary during the pendency of the dissolution proceedings would result in her obtaining his entire estate if he were to die during the pendency of the divorce. This amount would be certainly more than she would acquire under an equitable distribution of the marital estate and would result in an overcompensation to Debora. Rather, the right Debora seeks to protect in the instant case is essentially the continued right to an equitable distribution of the marital assets in the event of Gerard's death.

However, it is well settled in Illinois that the death of either party to a divorce action prior to final judgment deprives the circuit court of

jurisdiction over all aspects of the marriage relationship. *In re Estate of Chandler*, 90 Ill. App. 3d 674, 679, 413 N.E.2d 486, 491 (1980). Thus, if Gerard were to die during the pendency of the divorce proceedings, the assets in his trust would no longer be within the divorce court's jurisdiction and would instead be subject to probate law, which is concerned not with equitable distribution of property, but only with property rights. In Illinois, if Gerard dies intestate, Debora would be entitled to one half of his estate if Gerard has surviving descendants or all of the estate if he has no surviving descendants. 755 ILCS 5/2—1(a), (c) (West 2000). If Gerard dies testate, Debora has the right to renounce Gerard's will and claim her elective share of one third of the estate if Gerard leaves descendants or one half of the estate if he leaves no descendants. 755 ILCS 5/2—8(a) (West 2000).

We are cognizant, however, of the possible inconsistencies between Debora's rights in divorce and her spousal rights. If Gerard were to transfer all of his assets into the trust prior to his death such that none of the assets were to pass through probate, Debora could be undercompensated. *Johnson v. La Grange State Bank*, 73 Ill. 2d 342, 358, 383 N.E.2d 185, 192 (1978) (property transferred to a revocable trust prior to death not subject to surviving spouse's renunciation unless transfer was " 'colorable' or 'illusory' and tantamount to fraud"). We agree that this outcome would not reflect the partnership-based theory of marriage.

We note that under recent amendments to North Carolina law, the legislature has sought to ensure that, in the event a spouse dies prior to a distribution of property, a surviving spouse would receive a distribution that would reflect the partnership-based theory of marriage. To prevent the undercompensation of a spouse, the legislature has provided that a pending action for equitable distribution of marital assets does not abate upon the death of a party. N.C. Gen. Stat. § 50—20(l) (2001). To prevent the possibility of overcompensation when a surviving spouse acquires both an equitable distribution and a share of the decedent's estate, the legislature requires courts to consider property passing to the surviving spouse through a will, intestacy, a tenancy by the entirety, a beneficiary designation or an elective share in determining how to equitably distribute property. N.C. Gen. Stat. § 50—20(c)(11b) (2001).

Additionally, under the North Carolina intestacy and surviving spouse statutes, the court must consider property passing to a surviving spouse through equitable distribution in formulating a surviving spouse's elective share or intestate succession share. See N.C. Gen. Stat. §§ 30—3.2(d), 30—3.3(a) (2001). These legislative enactments evince an intent to promote the partnership principle of marriage. The

enactments allow an equitable distribution action to proceed when a party dies during the pendency of divorce proceedings, while limiting the risk of overcompensation to either party. Because Illinois law does not provide Debora with such a right to an equitable distribution upon Gerard's death, she cannot prove that she has a clearly ascertainable right in need of protection under count I.

■ We next consider count II of Debora's petition seeking to restrain Gerard from transferring, encumbering, concealing or otherwise disposing of any property except in the usual course of business or for the necessities of life pursuant to section 501(a)(2)(i) of the Act. Injunctions restraining the transfer of property are frequently utilized to maintain the status quo such that neither party dissipates the property of the marital estate or places the property beyond the court's adjudicatory power, preventing the court from distributing the assets in its final decree. See, *e.g.*, *In re Marriage of Schmitt*, 321 Ill. App. 3d 360, 747 N.E.2d 524 (2001) (injunction granted where spouse alleged to have hidden assets and threatened to dissipate assets); *In re Marriage of Joerger*, 221 Ill. App. 3d 400, 581 N.E.2d 1219 (1991) (injunction granted to prevent loss of business at family-owned tavern); *In re Marriage of Schweihs*, 222 Ill. App. 3d 887, 584 N.E.2d 472 (1991) (enjoining bank from initiating foreclosure of marital home in any court other than that hearing dissolution action).

While under section 2—615 the allegations are to be taken in the light most favorable to the nonmovant, the petitioner must allege all facts necessary to justify the relief sought; allegations consisting of mere opinion, conclusion or belief are not sufficient to support a petition for preliminary injunction. *In re Marriage of Schmidt*, 118 Ill. App. 3d 467, 471, 455 N.E.2d 123, 126 (1983). Here, Debora bases her request for an injunction on Gerard's previous modification of his estate plan to exclude her as beneficiary upon his death and the mere fact that Gerard has exclusive control over significant assets. Merely having control over assets is an insufficient basis to support an injunction. Such relief would be tantamount to imposing an automatic stay, which the supreme court found unconstitutional in *Messenger v. Edgar*, 157 Ill. 2d 162, 176-77, 623 N.E.2d 310, 317 (1993).

Furthermore, Debora fails to allege specifically what, if any, property Gerard has transferred or threatened to transfer other than property that will transfer upon his death. She simply states generally that "unique property may be irreplaceable, and the estate may not be able to compensate Debora for her fair share." Such speculation is an insufficient ground for the court's award of a preliminary injunction. See *In re Marriage of Rayfield*, 221 Ill. App. 3d 763, 767, 583 N.E.2d 23, 26 (1991). Accordingly, we find that it was proper for the trial

court to dismiss count II of Debora's petition. We note, however, that our opinion does not prejudice Debora from filing a subsequent petition pursuant to section 501(a)(2) if new circumstances present themselves that would require the need for such an injunction.

Accordingly, for the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

HARTMAN and GREIMAN, JJ., concur.