# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Rivera*, 2016 IL App (1st) 160552

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JUAN A. RIVERA, Petitioner-Appellee, and MELISSA SANDERS-RIVERA, Respondent-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-0552 |
| Filed | September 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-D-4873; the Hon. Carole Kamin Bellows, Judge, presiding. |
| Judgment | Certified question answered. |
| Counsel on Appeal | Schiller DuCanto & Fleck LLP, of Chicago (Donald C. Schiller, Andrea K. Muchin, and Brian A. Schroeder, of counsel), for appellant.<br><br>Michael J. Berger, Leon I. Finkel, Myra A. Foutris, and Jessie A. McKenzie, all of Berger Schatz, of Chicago, for appellee. |
| Panel | JUSTICE HOWSE delivered the judgment of the court, with opinion.<br>Justices McBride and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1      This appeal comes to the court on a certified question concerning whether the proceeds of petitioner's settlement of a lawsuit for a wrongful conviction is marital property for purposes of distributing a marital estate. The court certified the following question:

> "Whether the settlement proceeds received from a wrongful conviction action are marital property when (a) the coerced confession and initial conviction occurred before the marriage, and (b) the conviction was reversed during the marriage."

¶ 2      For the following reasons, we answer the certified question in the affirmative and find the settlement proceeds in this case are marital property because the lawsuit accrued during the marriage.

¶ 3                             BACKGROUND

¶ 4      The circumstances that led to this appeal stem from petitioner's conviction in 1993 for murder. Petitioner was incarcerated from the time of his arrest in 1992 until January 2012, after his conviction was reversed by the appellate court. While petitioner was incarcerated, he and respondent got married on October 31, 2000. After his release from prison in 2012, petitioner filed a petition for dissolution of marriage from respondent in 2014. In March 2015, petitioner settled his lawsuit for $20 million, of which petitioner will receive approximately $11.36 million.

¶ 5      Petitioner subsequently filed a motion for summary judgment in the dissolution case, arguing that the settlement proceeds are his own separate property, not marital property. Respondent filed a motion for a declaratory judgment that the proceeds are marital property and specifically that the portion of the proceeds that were awarded for the defamation of character count in petitioner's lawsuit are marital property. The trial court certified for appeal the issue of whether the settlement proceeds are marital property.

¶ 6      The facts of petitioner's conviction are of limited relevance to the issue in this appeal, so we will limit our discussion of those facts to those that are germane. Petitioner was charged with first degree murder in 1992. *People v. Rivera*, 333 Ill. App. 3d 1092, 1093 (2001). The victim had been raped and stabbed multiple times. *Id.* The evidence against petitioner included incriminating statements to police and a signed confession. Petitioner maintains these statements were coerced. In 1993, following a jury trial, petitioner was convicted and sentenced to natural life imprisonment without the possibility of parole. *Id.* He appealed, and his conviction was reversed and the cause remanded for a new trial. *Id.* A second jury trial commenced in 1998. *Id.* at 1094. The jury again found petitioner guilty, and the court sentenced him to natural life imprisonment without the possibility of parole. *Id.* at 1100.

¶ 7      Petitioner appealed the 1998 verdict and sentence, and in 2002 the appellate court affirmed. *Id.* at 1104. In 2004 the circuit court of Cook County granted petitioner's motion for DNA testing of material taken from vaginal swabs of the victim. *People v. Rivera*, 2011 IL App (2d) 091060, ¶ 4. As a result of those tests, the circuit court of Cook County granted petitioner relief from judgment. *Id.* ¶ 4. A new jury trial commenced in 2009. *Id.* ¶ 5. The record shows that at the time of the murder, petitioner was already under arrest for a minor offense and as a result had been released from custody on electronic home monitoring. Despite evidence from the home monitoring system, which indicated that petitioner could not have committed the murder

because he was home at the time of the murder, he was unfortunately convicted again by a jury, and the court sentenced him to natural life imprisonment without the possibility of parole. *Id.* ¶ 22.

¶ 8 In 2011, the appellate court reversed petitioner's conviction. *Id.* ¶ 46. Petitioner left prison in 2012.

¶ 9 On October 30, 2012, petitioner filed a complaint under section 1983 of the United States Code alleging violations of his civil rights under color of law. 42 U.S.C. § 1983 (2012). Petitioner alleged various theories of recovery based on his wrongful conviction against numerous defendants including Lake County, various local governments, and members of the Illinois State Police (hereinafter, the lawsuit). On May 23, 2014, petitioner filed a petition for dissolution of marriage, and on July 3, 2014, respondent filed a counter-petition for dissolution.

¶ 10 On May 21, 2015, petitioner filed a motion titled "Motion for Partial Summary Judgment Regarding Petitioner's Non-Marital Settlement Funds." Petitioner's motion asserted that the entire settlement for his lawsuit "was based on the torts in his Complaint that arose out of his wrongful incarceration and conviction which were derived from conduct that occurred in 1992." Petitioner asserted that the lawsuit "was the result of conduct which led to his wrongful conviction prior to the marriage." Petitioner also alleged that he received a Certificate of Innocence (COI) from the State of Illinois and recovered approximately $213,000. Petitioner sought a partial summary judgment that the settlement proceeds from his lawsuit and his remaining COI funds are his nonmarital property. In support of his motion for summary judgment, petitioner attached an affidavit by Steve Art, one of petitioner's attorneys representing him in the lawsuit. Art averred that he was involved in all aspects of the settlement negotiations and that the "entire settlement was based on the torts in his Complaint that arose out of his wrongful incarceration and conviction which were derived from conduct that occurred in 1992 (Counts I, II, III, IV, V, VI, VII, VIII, and IX)."

¶ 11 On May 27, 2015, respondent filed a motion titled "Motion for Declaratory Judgment that Civil Rights Lawsuit and Settlement Proceeds Therefrom are Marital Property." Respondent asked the trial court to find that the lawsuit is marital property "because it could not have been filed unless and until the conviction was overturned." Respondent noted petitioner made that same argument to the United States District Court for the Northern District of Illinois in response to a motion to dismiss his lawsuit. Respondent argued that the lawsuit did not become property until the conviction was reversed in 2011, after the parties were married, and that the lawsuit is marital property because the lawsuit accrued during the marriage. In her reply to petitioner's response to respondent's motion for declaratory judgment, respondent argued that the settlement petitioner received included a settlement for a defamation claim included in the lawsuit. The defamation claim was in count X of the lawsuit. Respondent argued that the defamation claim was based on statements made during the marriage and, therefore, petitioner "cannot properly claim the defamation count is anything but marital property." The defamation claim was based on an article appearing in the New York Times in 2011, during the parties' marriage.

¶ 12 Pursuant to an agreed order, petitioner filed a supplement to his motion for partial summary judgment and an amendment to Art's affidavit. Petitioner's supplement to the motion for partial summary judgment asserted the defamation claim had no impact on or value in the overall settlement of $20 million. Petitioner also alleged the defamation claim was never

discussed in settlement negotiations. Petitioner pointed out that seven defendants were able to agree to a settlement as a whole even though only two were the subject of defamation claims, and he argued that this was "because the defamation claim did not factor into the settlement amount." In the amended affidavit, Art averred as follows:

> "The defamation claim in [petitioner's] civil lawsuit had no impact on or value in the overall settlement of $20 million. Indeed, during settlement negotiations with the defendants in the civil lawsuit, the defamation claim was never even discussed. Moreover, the group of seven (7) defendants was able to agree to a settlement as a whole (even though two (2) of the defendants had defamation claims against them while the rest did not) because the defamation claim did not factor into the settlement amount. The defamation claim did not factor into or increase the settlement to [petitioner]."

¶ 13    In August 2015 respondent filed a motion titled "Motion to Strike Affidavits of Steve Art." Respondent argued Art's averment that all defendants were able to reach a settlement as a whole, despite only two having defamation claims against them, is not supported by a statement that Art has knowledge the defamation claim had no effect on the amount paid by the defendants who did have a defamation claim against them. Art offered no facts to indicate how any of the defendants were able to agree on the settlement amount and offered no facts for the conclusion the defamation count was not included in their determination. Moreover, one defendant subject to the defamation count negotiated separately, and Art offered no facts for his conclusion the defamation claim was not considered in that defendant's agreement to a settlement amount. Respondent further argued that each relevant settlement agreement (with the defendants subject to the defamation claim) stated petitioner was releasing *every* claim against the defendant, which necessarily included the defamation claim. She further argued each agreement contains an integration clause indicating the parties "specifically agreed that the agreements would be interpreted solely according to the language in the agreements." Respondent argued that Art's affidavits are contrary to the plain language of the settlement agreements and are irrelevant and inadmissible. She stated they are nothing more than Art's opinion as to how the settlement agreements should be construed.

¶ 14    Respondent argued that because Art admitted that the defamation claim was not discussed during negotiations, Art has no factual basis to conclude the defamation claim had no impact on the amount of the settlement. Respondent argued "Art is offering as a fact what in reality is merely his subjective opinion, again because Art never even discussed the defamation claim with the defendants during the settlement negotiations." She asserts there are no facts to support the conclusion the defamation claim had no impact on the amount of the settlement. Respondent further replied that the court must first determine whether Art's affidavits comply with Rule 191 before she is required to submit counter-affidavits. Regardless, she is not required to submit counter-affidavits because Art's statement that the defamation claim did not influence the amount of the settlement is refuted by the documents attached to the affidavits, in that the settlement documents state the settlement was for a release of all claims including the defamation claim. Respondent argued she is allowed to rely on the contradiction between the affidavits and the documents attached thereto to create a genuine issue of material fact. She asserts the "dismissal of the defamation claim was part of the expressed consideration in the written settlement agreements in exchange for which [petitioner] received $14.5 million."

¶ 15    The trial court found that given Art's firsthand experience and involvement in the case, he "is qualified to testify to the facts concerning the settlement meetings and final settlement." The court ruled that Art's affidavits were made based on the personal knowledge of the affiant and do not set forth legal conclusions or opinions without stating supporting facts. "Rather, Art's Affidavits, as a whole, are based upon his personal knowledge of [petitioner's] case and personal involvement in the settlement negotiation process. Thus, there is a reasonable inference that Art could competently testify to the contents of his Affidavit at trial." The court held the affidavits satisfied Rule 191 and denied respondent's motion to strike.

¶ 16    Subsequently, the trial court granted petitioner's motion for partial summary judgment that his settlement proceeds and remaining COI funds are his nonmarital property, and it denied respondent's motion for declaratory judgment. The court turned first to whether a genuine issue of material fact exists. The court rejected respondent's argument the settlement documents contradict Art's affidavits. The court reasoned: "Art's affidavits provide testimony regarding how the parties arrived at the value of the released claims. The settlement documents, in contrast, do not set forth information relating to how the parties arrived at the value of the released claims. Thus, the settlement agreements themselves do not contradict Art's affidavits." The court took as true the statements in Art's affidavits regarding the basis for the settlement, specifically noting that respondent failed to file a counter-affidavit.

¶ 17    Turning to the classification of the settlement proceeds, the trial court found that no cases presented the exact factual situation present here but that this case could be analogized to cases that address characterization of traditional personal-injury claims as marital or nonmarital property. The court wrote as follows:

    "[F]or purposes of property characterization in the present divorce action, the Court will regard [petitioner's] lawsuit and settlement proceeds therefrom as no different than other personal injury lawsuits involving injuries that occurred before marriage. In such cases, the claim remains non-marital, regardless of whether the lawsuit is brought or the settlement is paid during the marriage."

¶ 18    Nonetheless, the court later noted that the "differentiation between the simultaneous timing of cause of action and injury in most tort cases, and, [petitioner's] inability to assert his cause of action simultaneously with his injury, is what causes this to be an issue of first impression for this Court." The court rejected respondent's claim the settlement (or at least a portion of it) was marital property because the defamation claim was based on events that occurred during the marriage by relying on Art's affidavits that the defamation claim did not factor into the settlement. Next, the court found persuasive a ruling in a proceeding related to this case in which the appellate court found that the insurance carrier for one of the defendants in petitioner's lawsuit at the time of petitioner's release was not responsible to provide coverage for petitioner's damages.

¶ 19    The trial court found that the injuries that gave rise to the lawsuit occurred or were based on events that occurred prior to the date of marriage, and based on Art's affidavits, the entire settlement was based on torts that arose from conduct that occurred prior to the marriage. The court ruled that petitioner established that there is no genuine issue of material fact as to the characterization of the settlement proceeds received from the lawsuit and remaining COI funds as his nonmarital property.

¶ 20    Respondent filed a motion titled "Melissa's Motion for a Supreme Court Rule 304(A) or Rule 308 Finding for the Immediate Appeal of the Ruling on Her Motion for Declaratory

Judgment." The trial court issued an order finding that the "classification of the lawsuit and settlement proceeds as marital or non-marital property will control various facets of the pending dissolution action, specifically the burden of proof and scope of evidence to be considered in the division of the settlement proceeds. Therefore, the disposition of the [order granting partial summary judgment in favor of petitioner] will have a substantial impact on the course of this litigation." The court denied respondent's motion for a Rule 304(A) finding and granted her motion to certify a question of law for interlocutory appeal pursuant to Rule 308. The court certified the following question:

> "Whether the settlement proceeds received from a wrongful conviction action are marital property when (a) the coerced confession and initial conviction occurred before the marriage, and (b) the conviction was reversed during the marriage."

¶ 21     On May 4, 2016, this court granted respondent's Rule 308 application for leave to appeal.

¶ 22                                          ANALYSIS

¶ 23     "The scope of review in an interlocutory appeal under Rule 308 is ordinarily limited to the question certified by the trial court, which is reviewed *de novo*. [Citation.]" *Yarbrough v. Northwestern Memorial Hospital*, 2016 IL App (1st) 141585, ¶ 30. The parties dispute whether this court has the authority to review the trial court's judgment denying respondent's motion to strike the Art affidavits in addition to answering the certified question. "When this court accepts an appeal involving a question of law identified under Rule 308, interests of judicial economy and the need to reach an equitable result oblige us to go beyond the question of law presented and consider the propriety of the order that gave rise to the appeal. [Citations.]" *Bright v. Dicke*, 166 Ill. 2d 204, 208 (1995) (citing *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 193-94 (1995), and *Schrock v. Shoemaker*, 159 Ill. 2d 533, 537 (1994)).

¶ 24     We can answer the certified question as written without addressing the motion to strike, but in terms of the order giving rise to the appeal, that order began with the factual presumption that no part of the settlement represented compensation for the defamation claim. The certified question thus presumes the correctness of the trial court's judgment, which was based on its acceptance of the Art affidavit. For the sake of judicial economy, we will first address the issue raised in the certified question because it is potentially dispositive of all the issues in this case—if we answer the certified question in the affirmative and find the settlement (whether a portion is attributable to the defamation claim or not) is marital property, respondent will have no reason to appeal the order on the Art affidavit. She will simply present evidence pursuant to section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/503(d) (West 2012)) to aid in the trial court's judgment dividing the marital property in just proportions. Accordingly, we will turn first to the certified question. Then, if the desire for an equitable result and the interests of judicial economy warrant, we will review the order denying the motion to strike the Art affidavits.

¶ 25                                    Certified Question

¶ 26     Respondent argues petitioner's lawsuit, and consequently the proceeds of the settlement of that lawsuit, is marital property. See *In re Marriage of Gan*, 83 Ill. App. 3d 265, 270 (1980) ("The proceeds of the personal injury settlement having been properly declared to be marital property, they are subject to disposition, along with other marital property, pursuant to the provisions of section 503(c) and (d) of the Act."). First, respondent argues that under *Heck v.*

*Humphrey*, 512 U.S. 477 (1994), *Ferguson v. City of Chicago*, 213 Ill. 2d 94 (2004), and *Rivera v. Lake County*, 974 F. Supp. 2d 1179 (N.D. Ill. 2013), petitioner's section 1983 cause of action did not exist and therefore did not accrue until his conviction was reversed during the marriage. Second, under *In re Marriage of DeRossett*, 173 Ill. 2d 416 (1996), a cause of action that accrues during a marriage is marital property. Third, prior to the conviction being vacated, the cause of action was not a present property interest but a mere expectancy, and under *In re Marriage of Centioli*, 335 Ill. App. 3d 650 (2002), it was not property for purposes of the Dissolution Act. Because the cause of action came into existence during the marriage (when petitioner's wrongful conviction was vacated), it is property "acquired" during the marriage, and therefore, pursuant to section 503 of the Dissolution Act (750 ILCS 5/503 (West 2014)), the cause of action is marital property.[1]

¶ 27    Petitioner responds "if the tort is one where the injury and the accrual of the cause of action are separate events, then the relevant inquiry [for purposes of characterizing the cause of action resulting from the tort as marital or nonmarital property] is the time of the injury." He argues that respondent, relying on *Heck*, conflated the date he could sue with the date his property rights in the cause of action arose under the Dissolution Act. Petitioner argues *Heck* is a procedural law regulating when a party can file a lawsuit that does not control the characterization of property. Petitioner argues that *Heck* does not control because "it was created solely to address a very specific procedural paradox inherent in wrongful conviction claims, related to the need to prevent convicts from collaterally attacking their convictions in the civil courts before the convictions themselves are reversed." Rather, petitioner argues, the characterization of the cause of action for purposes of a distribution of marital property is controlled "by the date of the actual injury giving rise to the civil rights claim."

¶ 28    In support of his assertion that the date of injury controls the characterization of a cause of action as marital or nonmarital, petitioner argues that *In re Marriage of DeRossett* and *In re Marriage of Drone*, 217 Ill. App. 3d 758 (1991), and others like them on which respondent relied for the proposition that the date a cause of action accrues determines marital property rights, "are more appropriately interpreted to support [petitioner,] where they have held that the classification of personal injury settlements and workers' compensation awards is determined by the date the actual injury occurred (and for which the lawsuit is based), rather than the date the award is received."

¶ 29                    *Heck* and *Ferguson* and Accrual of the Cause of Action

¶ 30    *Heck* was an appeal from the dismissal of a complaint seeking monetary damages filed in federal court alleging prosecutors and police had engaged in unlawful conduct leading to the petitioner's arrest. *Heck*, 512 U.S. at 478-79. The district court dismissed the complaint without prejudice "because the issues it raised directly implicate the legality of [the petitioner's] confinement." (Internal quotation marks omitted.) *Id.* at 479. The Seventh Circuit

---

[1]We note that respondent devotes attention to arguing that the circuit court's analysis of this question was incorrect, but because our standard of review is *de novo*, those arguments, while instructive, are superfluous. *Manago v. County of Cook*, 2016 IL App (1st) 121365, ¶ 16 ("*De novo* review is completely independent of the trial court's decision. [Citation.]"); *Battaglia v. 736 N. Clark Corp.*, 2015 IL App (1st) 142437, ¶ 23 ("under *de novo* review, the appellate court analyzes issues of law as if they were new issues").

affirmed the dismissal, finding the complaint had to be classified as an application for *habeas corpus* because "if he won his case the state would be obliged to release him even if he hadn't sought that relief" (*id.* at 480) and, therefore, the petitioner had to exhaust his administrative remedies. *Id.* The Supreme Court noted the conflict created by the intersection of an action under section 1983 (42 U.S.C. § 1983 (1994)), which does not require exhaustion of state remedies, and an action for *habeas corpus*, which requires state prisoners "first seek redress in a state forum." *Heck*, 512 U.S. at 480-81. The question created by that intersection was whether a section 1983 plaintiff not explicitly seeking *habeas corpus* relief, but who would require such relief if successful, should be required to exhaust state remedies. However, the Supreme Court found that the "issue with respect to monetary damages challenging conviction is not *** exhaustion; but rather *** whether the claim is cognizable under § 1983 at all." *Id.* at 483. The Court held such as claim was not cognizable under section 1983. *Id.*

¶ 31    The Supreme Court stated it must look to the common law of torts to determine whether there was any bar to the suit at issue. *Id.* The closest analogy to that suit was the common-law cause of action for malicious prosecution. *Id.* at 484. "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Id.* The Court found that same principle "applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486. The Court held that

> "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*, [citation]. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." (Emphasis omitted.) *Id.* at 486-87.

¶ 32    The Court found that its holding was in one respect broader than engrafting an exhaustion requirement on those section 1983 claims that would necessarily show a conviction or sentence to be unlawful or that would "resolve a necessary element to a likely challenge to a conviction." (Internal quotation marks omitted.) *Id.* at 488. The Court stated its ruling does "not engraft an exhaustion requirement upon § 1983, but rather den[ies] the existence of a cause of action." *Id.* at 489. Thus, "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* For that reason, under the Court's analysis in *Heck,* "the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, [citations], so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90.

¶ 33    In *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 97 (2004), police arrested Ferguson on July 31, 1999, and on August 25, 2000, the trial court granted the State's request to strike the charges against Ferguson with leave to reinstate. *Id.* Ferguson's lawyer filed a demand for a trial. *Id.* at 97-98. The statutory speedy-trial period elapsed on February 1, 2001, without the

State seeking leave to reinstate the charges and without a trial. *Id.* at 98. On January 29, 2002, Ferguson filed a complaint against the City of Chicago for malicious prosecution. *Id.* The trial court dismissed the complaint based on the expiration of the statute of limitations, and the appellate court affirmed. *Id.* The sole issue before our supreme court was whether Ferguson's cause of action was barred by the statute of limitations. *Id.* at 99. The applicable statute of limitations required Ferguson to commence his cause of action "within one year from the date that the injury was received or the cause of action accrued. [Citation.]" (Internal quotation marks omitted.) *Id.* (quoting 745 ILCS 10/8-101 (West 2000)). The court noted that "[a] cause of action for malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor. [Citation.]" *Id.* (citing *Stanger v. Felix*, 97 Ill. App. 3d 585, 586-87 (1981)). The point of contention in *Ferguson* was when the criminal proceedings in that case "should be deemed to have been terminated." *Id.*

¶ 34      The *Ferguson* court agreed with the plaintiff that the expiration of the speedy-trial period, not the striking of the charges with leave to reinstate (SOL), was the operative event for assessing the timeliness of his malicious prosecution action. *Id.* at 100. "Because a case which has been SOL'd remains pending, the statute of limitations *** is tolled ***." *Id.* at 101 (citing *People v. East-West University, Inc.*, 265 Ill. App. 3d 557, 562 (1994)). The court held that the "criminal proceedings against Ferguson did not terminate, and Ferguson's malicious prosecution claim did not accrue, until such time as the State was precluded from seeking reinstatement of the charges. That period was marked by the expiration of the statutory speedy-trial period." *Id.* at 104. The expiration of the statutory speed-trial period without further actions by the State or the court was when the proceedings terminated and "Ferguson's cause of action for malicious prosecution accrued." *Id.*

¶ 35      Finally, *Rivera v. Lake County*, 974 F. Supp. 2d 1179 (N.D. Ill. 2013), was a decision on multiple motions to dismiss petitioner's lawsuit based, in part, on the statute of limitations. *Id.* at 1187-88. The court denied the motions to dismiss, finding the various claims did not accrue until petitioner's conviction was vacated. *Id.*

¶ 36                    *DeRossett* and *Drone* and the Characterization of Marital Property

¶ 37      In *In re Marriage of DeRossett*, 173 Ill. 2d at 417-18, the petitioner had filed a workers' compensation claim "in which he alleged that the date of injury was January 18, 1990." The petitioner filed a petition for dissolution of marriage on February 2, 1994. In September 1994, during the pendency of the dissolution proceeding and prior to resolution of the workers' compensation claim, the trial court determined that the respondent was entitled to a portion of the petitioner's workers' compensation claim and reserved ruling on the amount until the claim was settled. *Id.* at 418. Later that month, the petitioner accepted a lump-sum settlement of his claim. *Id.* The trial court entered a judgment of dissolution in October 1994, and in December 1994, after denying the petitioner's motion to reconsider, awarded the respondent 30% of the settlement. *Id.* The appellate court affirmed, finding "the trial court had properly determined that the workers' compensation claim was marital property because it accrued during the marriage." *Id.* at 418-19. On appeal to our supreme court, the petitioner did not directly challenge the finding that the claim or the settlement thereof was marital property because it accrued during the marriage. Rather, the petitioner argued that the settlement should be considered his nonmarital property because it is compensation for his diminished earning capacity, which will continue beyond the date of dissolution. *Id.* at 419. The petitioner's

argument was in accord with the "analytical approach" used by the appellate court in *In re Marriage of Waggoner*, 261 Ill. App. 3d 787 (1994).

¶ 38 Our supreme court rejected that argument because it "completely ignores section 503 of the [Dissolution] Act, which mandates what constitutes marital and nonmarital property for purposes of disposition on dissolution of marriage." *In re Marriage of DeRossett*, 173 Ill. 2d at 419. Section 503(a) states that "marital property" means "all property acquired by either spouse subsequent to the marriage." (Internal quotation marks omitted.) *Id.* (quoting 750 ILCS 5/503(a) (West 1994)). The court found that section 503(a) of the Dissolution Act "contains an 'exclusive' and 'specific' list of nonmarital property [citation], and workers' compensation awards do not fall under any of the methods listed." *Id.* at 420. (Nor do section 1983 causes of action.) Therefore, the court held, the "petitioner's workers' compensation award constitutes marital property because the claim accrued during the marriage of the parties." *Id.* at 421.

¶ 39 In *In re Marriage of Drone*, 217 Ill. App. 3d 758, 764 (1991), the respondent appealed an order distributing marital property. The trial court awarded the petitioner the parties' marital home, the down payment on which was paid with funds from the respondent's workers' compensation settlement. *Id.* at 761. The parties also used a portion of the settlement to purchase two IRAs, for carpeting for the home, and for payment toward the purchase of a vehicle. *Id.* at 762. A portion of the settlement remained in the parties' joint checking account. *Id.* at 761. On appeal the respondent argued the trial court "erred in finding that the down payment on the marital home made from his workers' compensation settlement check was a gift to the marriage instead of nonmarital property." *Id.* at 764. The court noted that the injury for which the respondent received the workers' compensation settlement check occurred before the parties were married but he received the settlement check during the marriage. *Id.* The *Drone* court relied on *In re Marriage of Dettore*, 86 Ill. App. 3d 540, 542 (1980), for the proposition that "if the claim for a compensation award accrues during the marriage, the award is marital property regardless of when received. [Citation.]" (Internal quotation marks omitted.) *In re Marriage of Drone*, 217 Ill. App. 3d at 764. The *Drone* court found that, applying the reasoning of *Dettore*, "it is reasonable to infer that the time the cause of action accrues determines the classification of this property interest. Generally, a cause of action accrues when facts exist which allow a person to maintain an action against another." *Id.* at 764-65 (citing *Aetna Life & Casualty Co. v. Sal E. Lobianco & Son Co.*, 43 Ill. App. 3d 765 (1976)). The court held that the respondent's workers' compensation claim accrued "at the time of his injury" prior to the marriage, therefore "his settlement check was nonmarital property as it was acquired prior to the marriage." *Id.* at 765.

¶ 40 In *In re Marriage of Burt*, 144 Ill. App. 3d 177, 178 (1986), the court held that "a cause of action for personal injuries to a party to a dissolution proceeding occurring during the pendency of the proceedings is marital property" in its entirety. Notably, the *Burt* court held that "we are impressed by the fact that the complete list of types of property excluded under section 503(a) makes no mention of any types of causes of action." *Id.* at 182. The *Burt* court relied in part on the decision in *In re Marriage of Thomas*, 89 Ill. App. 3d 81 (1980). There, the court held that "the better rule is to have the time of accrual of the claim, rather than the date the award is received, govern the classification of the award as marital property." *Id.* at 84. In *Thomas*, the workers' compensation claim was contested and was still pending at the time of the dissolution. *Id.* at 82.

¶ 42       Here, as in *In re Marriage of Burt*, petitioner "does not dispute that most causes of action are property." *In re Marriage of Burt*, 144 Ill. App. 3d at 179. Reviewing the foregoing authorities we find no support for petitioner's argument that the time of the "injury" determines the character of a cause of action as marital or nonmarital property for purposes of a dissolution proceeding. Instead, the authorities support respondent's position that a cause of action is marital property if the cause of action accrues during the marriage. The fact that *DeRossett* and *Drone* involve causes of action where the injury and accrual of the cause of action are simultaneous (see *In re Marriage of Drone*, 217 Ill. App. 3d at 765 ("workers' compensation claim accrued at the time of his injury")) does in fact mean that those cases are not on all fours with this case, as petitioner argues. But that fact does not mean that the rationale behind those cases—that the date of accrual determines the character of a cause of action as marital or nonmarital property—is inapplicable. Each of the cases on which petitioner and respondent rely uses the date of accrual to characterize the cause of action as marital or nonmarital. See *In re Marriage of DeRossett*, 173 Ill. 2d at 421 ("Therefore, we agree with the appellate court herein that, under the [Dissolution] Act, petitioner's workers' compensation award constitutes marital property because the claim accrued during the marriage of the parties."); *In re Marriage of Drone*, 217 Ill. App. 3d at 764-65 (finding the respondent's workers' compensation claim accrued at the time of his injury in 1979 because he had the right to file his claim. "Therefore, his settlement check was nonmarital property as it was acquired prior to the marriage."); *In re Marriage of Thomas*, 89 Ill. App. 3d at 84 ("we believe the better rule is to have the time of accrual of the claim, rather than the date the award is received, govern the classification of the award as marital property"). The fact that in most cases those dates are the same is not the basis for, nor restricts the applicability of, that rule. We find the rule is that the classification of a cause of action as marital or nonmarital property depends on whether the cause of action accrues during the marriage, meaning the date that the claimant had a right to file a claim for damages. *In re Marriage of Drone*, 217 Ill. App. 3d at 764 (citing *Aetna Life & Casualty Co.*, 43 Ill. App. 3d 765).

¶ 43       Petitioner cited *In re Marriage of Burt* as an example of a case holding that the classification of personal injury settlements is determined by the date the actual injury occurred. But the *Burt* court did not actually address that issue because in that case, "the thrust of [the] petitioner's theory" (which the court rejected (*In re Marriage of Burt*, 144 Ill. App. 3d at 181 ("all portions of a cause of action for personal injuries are marital property under section 503(a)"))) was that the portion of the cause of action having to do with future pain, suffering, and disability "is so personal to the injured spouse that it should not be deemed marital property." *Id.* at 179. Although most of the facts giving rise to petitioner's claim arose prior to the marriage, one key fact nonetheless prevented petitioner from maintaining his lawsuit. It is reasonable to infer the date that fact came into existence "determines the classification of this property interest." *In re Marriage of Drone*, 217 Ill. App. 3d at 764-65 ("it is reasonable to infer that the time the cause of action accrues determines the classification of this property interest. Generally, a cause of action accrues when facts exist which allow a person to maintain an action against another." (citing *Aetna Life & Casualty Co.*, 43 Ill. App. 3d 765)). We hold the date of accrual is the appropriate inquiry to determine whether petitioner's lawsuit is marital property or nonmarital property in this case. Petitioner's arguments to the contrary are unconvincing.

¶ 44　　In support of petitioner's assertion that he acquired his property interest at the time of his injury, despite the fact he was barred from pursuing a remedy, petitioner relies upon the definition of property in *In re Marriage of Weinstein*, 128 Ill. App. 3d 234, 244 (1984). In *Weinstein*, the court held that a medical degree and license to practice surgery did not constitute property. *Id.* There, this court stated that "the term property has been defined as a word of the very broadest import, connoting any tangible or intangible *res* which might be made the subject of ownership." (Internal quotation marks omitted.) *Id.* (quoting *In re Marriage of Goldstein*, 97 Ill. App. 3d 1023, 1026 (1981)). *Weinstein* goes on to state that "to be property within the ambit of the [Dissolution] Act, however, the *res* must be in the nature of a present property interest, rather than a mere expectancy interest." *Id.* (citing *In re Marriage of Hunt*, 78 Ill. App. 3d 653, 660 (1979)). "An expectancy interest is the interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent *** or of a beneficiary designated by a living insured who has a right to change the beneficiary." (Internal quotation marks omitted.) *Id.* (quoting *In re Marriage of Peshek*, 89 Ill. App. 3d 959, 964 (1980)).

¶ 45　　To find an extant property interest in 1992 and 1993, petitioner argues that his cause of action "consists of the operative facts on which a right to sue is based, even if that lawsuit does not 'accrue' until all the legal predicates establishing an enforceable claim or right are present." Defining a "cause of action" in this way—the presence of the operative facts of a lawsuit even though the lawsuit has not accrued—petitioner argues his cause of action, in other words the property at issue, existed in 1992 and 1993.[2] Petitioner argues respondent's reliance on *In re Marriage of Centioli*, 335 Ill. App. 3d 650 (2002), is misplaced and his "property rights" as described above are not a mere expectancy. In *Centioli*, this court faced "an issue of first impression as to whether the court can enjoin a spouse from changing the beneficiary designation of an *inter vivos* revocable trust while dissolution of marriage proceedings are pending." *Id.* at 652. The court held the spouse seeking the injunction was not entitled to relief because "her beneficial interest [was] not a clearly ascertainable right to be protected." *Id.* at 656. The court held that her beneficial interest in the revocable trust "was but a mere expectancy." *Id.* Petitioner attempts to distinguish *Centioli* on the grounds his injuries were irrevocable, "and an equally irrevocable property interest arose."

¶ 46　　Petitioner's argument misses the mark, which lies on when he had a property interest to characterize as marital or nonmarital. In *Centioli*, the spouse's beneficial interest in the revocable trust could not "be characterized as a vested property interest within the ambit of the Act." *Id.* In this case, petitioner's injuries, alone, cannot be characterized as a legally cognizable cause of action because, he admits, the cause of action had not accrued. Under *DeRossett*, our supreme court considers a cause of action to be "acquired" when it accrues. See *In re Marriage of DeRossett*, 173 Ill. 2d at 421. Petitioner's argument also ignores the fact that petitioner's cause of action may have never accrued. If petitioner's conviction were not

_____

[2]Specifically, petitioner argued as follows:

　　"Under this principle, the operative facts and circumstances that gave rise to [petitioner's] cause of action occurred in 1992 and 1993. The 'property' at issue here is not the lawsuit, but rather the property is the wrongful conduct and resulting injury themselves (indisputably occurring prior to the marriage), which ultimately resulted in the settlement proceeds. Accordingly, [petitioner's] *property interest* in that cause of action, *i.e.*, the right to a legal remedy for the injuries he suffered from the wrongful conduct, was also acquired prior to the marriage." (Emphasis in original.)

- 12 -

reversed, he would never have been able to file a cause of action. See *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 695 (2002) ("it could be substantially disputed whether defendant would ever have title to or a right of possession of a chose for legal malpractice where it is unknown if defendant will ever bring such an action. Essentially, the plaintiff is making a prayer for relief based on a presumption that is nothing if not premature."). In *Gonzalez*, the court affirmed the denial of a motion pursuant to section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2000)) to turn over the asset of a possible legal malpractice action to satisfy a judgment. *Gonzalez*, 333 Ill. App. 3d at 695. The *Gonzalez* court characterized the putative legal malpractice claim, which had "neither been asserted nor commenced" as only a "*potential* chose in action." (Emphasis in original.) *Id.* at 694.

¶ 47    Petitioner argues his cause of action did not accrue until decades later because of a "procedural technicality" that was "created solely to address a very specific procedural paradox inherent in wrongful conviction claims." Specifically, the possibility of "the creation of two conflicting resolutions arising out of the same or identical transaction." (Internal quotation marks omitted.) *Heck*, 512 U.S. at 484. Petitioner argues that for purposes of characterizing the lawsuit as marital or nonmarital property, the focus should be on "the essence of a wrongful conviction claim," which is "the wrongful conduct itself, not the procedural technicality of when the wronged party can sue ***." (Emphasis omitted.) Petitioner argues that in this regard, *Indian Harbor Insurance Co. v. City of Waukegan*, 2015 IL App (2d) 140293, a decision in an ancillary proceeding to petitioner's lawsuit, is instructive.

¶ 48    In *Indian Harbor*, the insurer for certain defendants in petitioner's lawsuit sought a declaratory judgment they were not obligated to provide coverage under the defendants' law enforcement liability insurance policies. *Id.* ¶ 1. The policies at issue came into effect long after petitioner's prosecution, conviction and imprisonment. *Id.* ¶ 3. The issue to be decided was what constituted the "wrongful act" under the policies: the commencement of the alleged malicious prosecution in 1992 or the termination of the prosecution in favor of the accused in 2011. *Id.* ¶¶ 1, 4. The insureds in that case (defendants in petitioner's lawsuit) argued that petitioner's "prosecution continued until his conviction was reversed on December 9, 2011, a date that fell within the first policy period" (*id.* ¶ 6) and that the lawsuit "contained allegations of continuing injury" (*id.*). Petitioner adopted those arguments in *Indian Harbor*. *Id.* ¶ 7. The insureds in *Indian Harbor* relied on *Security Mutual Casualty Co. v. Harbor Insurance Co.*, 65 Ill. App. 3d 198 (1978), *rev'd*, 77 Ill. 2d 446 (1979), for the proposition that coverage is triggered at the time of termination of the underlying prosecution because "coverage is not triggered until there is a complete tort and *** the tort of malicious prosecution does not exist until the person prosecuted has been exonerated of wrongdoing." *Indian Harbor*, 2015 IL App (2d) 140293, ¶ 15 (citing *Security Mutual*, 65 Ill. App. 3d at 205-06). The *Indian Harbor* court rejected that argument because our supreme court overruled *Security Mutual* and because the appellate court had recently noted that "*Security Mutual* provides no guidance on construing an insurance policy, because it is well settled that a court construing an insurance policy must ascertain the parties' intent from the policy's language, and the appellate court's analysis in *Security Mutual* focused on the elements of a malicious-prosecution action instead of the policy's language." *Id.* ¶ 16 (citing *St. Paul Fire & Marine Insurance Co. v. City of Zion*, 2014 IL App (2d) 131312, ¶ 18).

¶ 49    The *Indian Harbor* court followed its decision in *St. Paul*, where the court held that "under the unambiguous language of the [insurer's] policy, the commencement of the alleged malicious prosecution was the occurrence triggering coverage, which occurrence took place outside the policy period." *Id.* ¶ 17 (citing *St. Paul Fire & Marine Insurance Co.*, 2014 IL App (2d) 131312, ¶ 1). The *Indian Harbor* court found that in *St. Paul*, the policy "did not require that the offense [(or tort)] of malicious prosecution be committed while the policy was in effect. Rather, that section provided coverage if the injury caused by the malicious prosecution happened while the policy was in effect." (Emphases omitted.) *Id.* ¶ 20 (citing *St. Paul Fire & Marine Insurance Co.*, 2014 IL App (2d) 131312, ¶ 14). Thus, the *St. Paul* court had to look to "when the injury resulting from the malicious prosecution happened, not when the offense [(or tort)] was committed." *Id.* The *St. Paul* court relied on *Muller Fuel Oil Co. v. Insurance Co. of North America*, 232 A.2d 168 (N.J. Super. Ct. App. Div. 1967). The New Jersey court

> "reasoned that four of the five elements of the tort of malicious prosecution occur when a prosecution is initiated. [Citation.] The court held that the 'essence' of the tort of malicious prosecution is the wrongful conduct in making the criminal charge. [Citation.] The court stated that '[i]t would be unreasonable to hold' that the parties intended the policy to provide coverage for a malicious-prosecution claim when 'four of the five essential ingredients' of the claim preceded the effective date of the policy." *St. Paul*, 2014 IL App (2d) 131312, ¶ 23 (citing *Muller Fuel Oil Co.*, 232 A.2d at 174).

¶ 50    The *St. Paul* court agreed with the *Muller Fuel* court "because the favorable termination of a malicious prosecution marks the beginning of the judicial system's remediation of the wrong committed, not the commencement of the injury or damage." (Internal quotation marks omitted.) *Id.* ¶ 24 (quoting *St. Paul Fire & Marine Insurance Co.*, 2014 IL App (2d) 131312, ¶ 23 (quoting *Town of Newfane v. General Star National Insurance Co.*, 784 N.Y.S.2d 787, 792 (App. Div. 2004))). The *St. Paul* court "found it difficult to see how a criminal defendant's release from prison could be described as an injury in any sense of the word." *Id.* (citing *St. Paul Fire & Marine Insurance Co.*, 2014 IL App (2d) 131312, ¶ 23). The *St. Paul* court concluded that "in essence, the policy provided that St. Paul would pay damages for injury that happens while the agreement is in effect and that is caused by a malicious prosecution. [Citation.] 'Because injury results upon the commencement of a malicious prosecution, it is the commencement of the prosecution that triggers insurance coverage under the policy.'" (Internal quotation marks omitted.) *Id.* ¶ 25 (citing and quoting *St. Paul Fire & Marine Insurance Co.*, 2014 IL App (2d) 131312, ¶ 25).

¶ 51    The policy in *Indian Harbor* provided that the insurer would pay damages "if an insured's wrongful act occurs during the policy period and results in injury, which includes malicious prosecution." *Id.* ¶ 30. The *Indian Harbor* court held "[b]ased on the rationale in *St. Paul*, the wrongful act is the filing of the malicious prosecution, not its favorable termination." *Id.* The *Indian Harbor* court found that the "policies focus not on the tort of malicious prosecution, but on wrongful acts which result in personal injury, as the triggering event." (Internal quotation marks omitted.) *Id.* ¶ 31. "Simply put, the policies [(at issue in *Indian Harbor*)] do not equate a wrongful act with a completed cause of action." *Id.*

¶ 52    We do find *Indian Harbor* instructive but not favorable to petitioner. *Indian Harbor*, like *St. Paul*, was "limited to construing the relevant language of the policies providing coverage for malicious prosecution." *Id.* ¶ 28. *Indian Harbor* and the cases it relied upon distinguished between the completed tort of malicious prosecution (which, as will be discussed below, is the

pertinent focal point for purposes of classifying a cause of action as marital or nonmarital property) and wrongful conduct giving rise to a wrongful prosecution (which, as explained in *Indian Harbor*, is the pertinent inquiry for purposes of determining insurance coverage under an occurrence policy). For purposes of determining insurance coverage, the wrongful conduct was the covered occurrence, not the initiation of the lawsuit, and therefore, the date of the wrongful conduct was dispositive. See *id.* ¶¶ 32-33 (describing occurrence-based policy).

¶ 53        Rather than look to the date of the wrongful conduct causing injury to petitioner, we must look to the date of the completed tort of malicious prosecution to characterize the lawsuit as marital property or nonmarital property. While it is true that *Indian Harbor* and the cases cited therein support finding that petitioner suffered an *injury* at the commencement of the prosecution, that injury alone did not give rise to a cognizable cause of action and, therefore, did not create a property interest that can be characterized as petitioner's nonmarital property. The decision in *Indian Harbor*, for which *Muller Fuel* is antecedent,[3] is not contrary to that determination.

> "The [e]ssence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge. [Citation.] Often, as here, the accused is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected. Thus, damage flows immediately from the tortious act. *But the accused may not sue for any damage sustained unless and until the criminal proceeding has terminated in his favor.* [Citation.] In addition to the proof of the termination in his favor, the plaintiff must adduce affirmative proof *** tending to show the falsity of or want of probable cause for the charge laid against him, or that the defendant did not honestly believe in his guilt. [Citation.] Thus, although *a favorable termination of the criminal proceeding is a condition precedent to institution of the action*, the 'essence' of the tort is the wrongful conduct in making the criminal charge. Since a suit for malicious prosecution must await a favorable termination of the criminal proceeding, the statute of limitations does not begin until such termination." (Emphases added and internal quotation marks omitted.) *Muller Fuel Oil Co.*, 232 A.2d at 174.

¶ 54        Similarly, since a suit under section 1983 must await a favorable termination, no property interest arises until such termination. Before property, including a cause of action, can be classified as marital or nonmarital, there must actually be a property interest. The defining characteristic of a property interest is that its holder has an enforceable right to it. See *In re Marriage of Wendt*, 2013 IL App (1st) 123261, ¶ 23 ("The *Brown* court, however, found that nonvested pension rights were not expectancies, noting that 'the defining characteristic of an expectancy is that its holder has no *enforceable right* to his beneficence.' " (Emphasis in original.) (quoting *In re Marriage of Brown*, 544 P.2d 561, 565 (1976) (*en banc*))). In *Wendt*, the court held that an employment bonus was not marital property where the employee had no contractual right to the bonus, the employer could choose not to award a bonus, and the right to a bonus was not automatic. *Id.* ¶ 20. Plaintiff's injuries did not give him a property interest

---

[3]In *St. Paul Fire & Marine Insurance Co.* "[w]e found instructive *Muller Fuel Oil Co.* [citation], the first case to adopt what would become the majority position." *Indian Harbor Insurance Co.*, 2015 IL App (2d) 140293, ¶ 22.

where plaintiff could not enforce his rights prior to the favorable termination of the criminal proceedings against him.

¶ 55 We also find that *Heck* did not simply create a procedural rule. The *Heck* court reiterated that section 1983 "creates a species of tort liability," and that the rules of the law of torts "defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well." (Internal quotation marks omitted.) *Heck*, 512 U.S. at 483. The Court analogized a section 1983 claim that would demonstrate the invalidity of a conviction to a common-law claim for malicious prosecution. *Id.* at 484. The requirement that the underlying proceedings be resolved in the plaintiff's favor, in a way demonstrating his or her innocence prior to bringing a malicious prosecution claim, has long been part of the substantive law of that cause of action. When proceedings began against petitioner, despite his suffering an injury, an element of the cause of action was missing.

> "The elements of a malicious-prosecution claim under Illinois law are well established. [Citation.] The elements are (1) the commencement of judicial proceedings by the defendant, (2) a lack of probable cause for the proceedings, (3) malice in instituting the proceedings, (4) *termination of the prosecution in the plaintiff's favor*, and (5) damage or injury to the plaintiff." (Emphasis added.) *St. Paul Fire & Marine Insurance Co.*, 2014 IL App (2d) 131312, ¶ 15 (citing *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 272 (1997)).[4]

¶ 56 In *March v. Cacioppo*, 37 Ill. App. 2d 235, 246-47 (1962), the trial court dismissed a complaint for, *inter alia*, malicious prosecution of a civil complaint. *Id.* at 243-44. The appellate court addressed whether the plaintiff had shown favorable termination of the underlying suit. *Id.* at 245. The *Cacioppo* court examined the reasons for the favorable termination requirement and found that none of them prevented the plaintiff's case from proceeding. *Id.* at 247. As it pertains to this appeal, the court wrote as follows:

> "We have found four reasons given for the rule that the plaintiff must show that the prior proceeding, civil or criminal, has terminated in his favor. The four are these:

>> (1) 'One [reason for this] is that a conviction of the accused is sufficient to establish that there was probable cause for the prosecution'; Prosser, Torts, 2nd Ed. (1955), sec 98.

>> ***

>> (2) 'the other [reason is] that in the malicious prosecution action the plaintiff cannot be permitted to make a collateral attack upon the criminal judgment . . .' Prosser, ibid.

>> ***

>> (3) 'Until a complaining party has shown that the action against him was unsuccessful, he has not shown that he has suffered any damage.' 18 RCL, Malicious Prosecution, sec 11.

---

[4]We discuss the elements of malicious prosecution in conformity with the Supreme Court's observation that "[t]he common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." *Heck*, 512 U.S. at 484.

\*\*\*

(4) 'If he [the plaintiff] were permitted to sue before he had won the first suit, he might secure a recovery for the bringing of an action which the court entertaining such cause found to be well brought.' 18 RCL, Malicious Prosecution, sec 11." *Id.* at 246-47.

¶ 57   Certainly facts existed in 1992 and 1993 which show that the defendants' conduct was wrongful. "But malice, although expressly proved, affords no cause of action, if there was probable cause for the prosecution. Society requires prosecutions for crimes, and probable cause for such prosecutions is a protection against legal liability, no matter by what motive the prosecutor may have been actuated." *McBean v. Ritchie*, 18 Ill. 114, 116 (1856). We do not dispute that petitioner suffered injury in 1992 and 1993 at the hands of the defendants to his lawsuit. However, for purposes of petitioner's lawsuit, petitioner had no damages until the appellate court vacated his conviction. *Cacioppo*, 37 Ill. App. 2d at 246-47.

¶ 58   The "essence" of the malicious prosecution for purposes of determining whether an insurer intended to cover a loss when issuing an insurance policy—which is all the *Muller Fuel* court found—is not determinative of when a party obtained a property interest for determining whether that property is marital or nonmarital. What is determinative of when property, in the form of a cause of action, is obtained (and thus marital or nonmarital) is when the cause of action accrues. See *supra* ¶ 43. In this context, using the date of accrual is not simply "a quirk of timing created solely to address a very specific procedural paradox inherent in wrongful conviction claims," as petitioner argues. Rather, using the date of accrual respects the fact petitioner did not have a claim until the appellate court vacated his conviction. *Heck*, 512 U.S. at 489 ("We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.").

¶ 59   Petitioner did not have a property interest in his lawsuit (or stated differently, no lawsuit existed) until the appellate court vacated his conviction in 2011. If there was no lawsuit, or property, in 1992 and 1993, there are no grounds for finding the lawsuit is nonmarital property. Because the lawsuit accrued in 2011, during the marriage, it is marital property subject to distribution pursuant to the factors set forth in section 503 of the Dissolution Act. 750 ILCS 5/503(a), (d) (West 2010).

¶ 60   As we stated earlier, having answered the certified question in the affirmative, respondent has no reason to appeal the judgment on the Art affidavit. The issue is moot, and we will not address the trial court's ruling.

¶ 61                                          CONCLUSION

¶ 62   The certified question is answered, and the cause is remanded for further proceedings consistent with this opinion.

¶ 63   Certified question answered.